No. 24-7700

---

# In the United States Court of Appeals for the Ninth Circuit

————

J. DOE 1, AND J. DOE, 2-5,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
PLAINTIFFS-APPELLANTS,

v.

GITHUB, A DELAWARE CORPORATION, ET AL.,
DEFENDANTS-APPELLEES.

————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
CASE NO. 22-CV-06823-JST, HONORABLE JON S. TIGAR, PRESIDING

————

**BRIEF OF AMICI CURIAE CHAMBER OF PROGRESS AND
COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION
IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE**

————

PAUL N. HAROLD
*Wilson Sonsini*
*Goodrich & Rosati, PC*
*1700 K Street N.W.*
*Washington, DC 20006*
*(202) 973-8000*
*pharold@wsgr.com*

*Counsel for Amici Curiae*
*Chamber of Progress; Computer & Communications Industry Association*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 34. Disclosure Statement under FRAP 26.1 and Circuit Rule 26.1-1

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form34instructions.pdf*

**9th Cir. Case Number(s)** | 24-7700

Name(s) of party/parties, prospective intervenor(s), or amicus/amici filing this form:

Chamber of Progress; Computer & Communications Industry Association

Under FRAP 26.1 and Circuit Rule 26.1-1, I make the following disclosures:

1. I disclose the following information required by FRAP 26.1(a) and/or Circuit Rule 26.1-1(b) for any nongovernmental corporation, association, joint venture, partnership, limited liability company, or similar entity[1] which is a party, prospective intervenor, or amicus curiae in any proceeding, or which the government identifies as an organizational victim below in section 2 of this form,[2] or which is a debtor as disclosed below in section 3 of this form.

   a. Does the party, prospective intervenor, amicus, victim, or debtor have any parent companies? Parent companies include all companies that control the entity directly or indirectly through intermediaries.
   ○ Yes     ◉ No

   If yes, identify all parent corporations of each entity, including all generations of parent corporations *(attach additional pages as necessary)*:

   Not applicable

   b. Is 10% or more of the stock of the party, prospective intervenor, amicus, victim, or debtor owned by a publicly held corporation or other publicly held entity?
   ○ Yes     ◉ No

---

[1] A corporate entity must be identified by its full corporate name as registered with a secretary of state's office and, if its stock is publicly listed, its stock symbol or "ticker."
[2] To the extent it can be obtained through due diligence.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

If yes, identify all such owners for each entity *(attach additional pages as necessary)*:

> Not applicable

2. In a criminal case, absent good cause shown, the government must identify here any organizational victim of the alleged criminal activity:

> Not applicable

3. In a bankruptcy case, the debtor, the trustee, or, if neither is a party, the appellant must identify here each debtor not named in the court of appeals caption:

> Not applicable

4. Are you aware of any judge serving on this Court who participated at any stage of the case, either in district court, administrative proceedings, or in related state court proceedings?
   ○ Yes    ⦿ No

If yes, list the name of the judge and the case name, case number, and name of court of the related proceedings:

> Not applicable

I certify that *(select only one)*:

⦿ this is the first disclosure statement filed in the above-referenced case by the above-identified party/parties, prospective intervenor(s), or amicus/amici, and this disclosure statement complies with FRAP 26.1 and Circuit Rule 26.1-1.

○ the party/parties, prospective intervenor(s), or amicus/amici submitting this supplemental disclosure statement has previously filed a compliant disclosure statement in this case, and this updated disclosure statement discloses changed or additional information.

○ I have reviewed this form, FRAP 26.1, and Circuit Rule 26.1-1 and, to the best of my knowledge, have no information to disclose at this time.

**Signature** | s/ Paul N. Harold | **Date** | 07/18/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 34**                    *2*                    *New 12/01/24*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...........................................................................................iv

TABLE OF AUTHORITIES ....................................................................................v

STATEMENT OF INTEREST OF *AMICI CURIAE* .................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................2

ARGUMENT ...........................................................................................................5

I.      Section 1202(b) claims require removal of CMI from a copy,
         not the inclusion of CMI on any substantially similar work................5

II.     Abandoning the identicality requirement would transform
         § 1202 from a targeted anti-piracy provision into a dangerous
         super-copyright.....................................................................................9

III.    Without the identicality requirement, § 1202 claims threaten to
         chill free expression and stifle innovation. .........................................13

CONCLUSION.......................................................................................................19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*,
    672 F. Supp. 3d 1035 (S.D. Cal. 2023)................................................................8

*AF Holdings, LLC v. Does 1-1058*,
    752 F.3d 990 (D.C. Cir. 2014)...........................................................................14

*Andersen v. Stability AI Ltd.*,
    2024 WL 3823234 (N.D. Cal. Aug. 12, 2024) .....................................................9

*Bell v. Milwaukee Bd. of Sch. Dirs.*,
    2022 WL 18276966 (E.D. Wis. Dec. 21, 2022) ...........................................14, 17

*Bell v. Wilmott Storage Servs., LLC*,
    12 F.4th 1065 (9th Cir. 2021) ...........................................................................14

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) .............................................................................5

*Design Basics, LLC v. Ashford Homes, LLC*,
    2018 WL 6620438 (S.D. Ohio Dec. 18, 2018)...................................................16

*Design Basics LLC v. Best Built Inc*,
    2016 WL 1060253 (E.D. Wis. Mar. 15, 2016)....................................................16

*Design Basics, LLC v. Big C Lumber Co. Inc.*,
    2019 WL 3285958 (N.D. Ind. July 22, 2019).....................................................15

*Design Basics LLC v. Campbellsport Bldg. Supply, Inc.*,
    2016 WL 3189202 (E.D. Wis. June 7, 2016) .....................................................16

*Design Basics, LLC v. Chelsea Lumber Co.*,
    2013 WL 3471142 (E.D. Mich. July 10, 2013)...................................................16

*Design Basics, LLC v. Clayton Homes of Lafayette, Inc.*,
    2019 WL 3402257 (N.D. Ind. July 25, 2019)......................................................15

*Design Basics LLC v. Clayton Homes of Lafayette Inc.*,
  2020 WL 9668708 (N.D. Ind. Jan. 9, 2020)........................................................15

*Design Basics, LLC v. Cypress Homes & Realty, LLC*,
  2013 WL 6044395 (E.D. Wis. Nov. 14, 2013)....................................................16

*Design Basics, LLC v. DJW & Assocs. of Michigan, Inc.*,
  2019 WL 7584399 (E.D. Mich. Aug. 6, 2019)....................................................15

*Design Basics, LLC v. Forrester Wehrle Homes, Inc.*,
  2018 WL 1583103 (N.D. Ohio Mar. 30, 2018)...................................................16

*Design Basics LLC v. Fox Cities Constr. Corp. Selective Ins. Co. of
  the Se.*,
  2016 WL 5485185 (E.D. Wis. Feb. 9, 2016)......................................................16

*Design Basics LLC v. J & V Roberts Invs., Inc.*,
  130 F. Supp. 3d 1266 (E.D. Wis. 2015) .............................................................16

*Design Basics, LLC v. Landmark Communities, Inc.*,
  2019 WL 3944437 (S.D. Ohio Aug. 21, 2019) ...................................................15

*Design Basics, LLC v. Lexington Homes, Inc.*,
  858 F.3d 1093 (7th Cir. 2017) ......................................................................14, 15

*Design Basics, LLC v. Lexington Homes, Inc. Acuity a Mut. Ins. Co.*,
  2016 WL 8116897 (E.D. Wis. Sept. 30, 2016) ...................................................16

*Design Basics, LLC v. Mitch Harris Bldg. Co.*,
  2021 WL 5563981 (E.D. Mich. Nov. 29, 2021)..................................................15

*Design Basics, LLC v. MTF Assocs., Inc.*,
  2019 WL 1405290 (M.D. Pa. Mar. 28, 2019) ....................................................15

*Design Basics, LLC v. Roersma & Wurn Builders, Inc.*,
  2012 WL 1830129 (W.D. Mich. Apr. 23, 2012)................................................16

*Design Basics, LLC v. Signature Constr., Inc.*,
  994 F.3d 879 (7th Cir. 2021) .............................................................................15

*Design Basics, LLC v. Van Prooyen Builders, Inc.*,
  2021 WL 838348 (N.D. Ind. Mar. 5, 2021)........................................................15

*Design Basics, LLC v. WK Olson Architects, Inc.*,
    2019 WL 527535 (N.D. Ill. Feb. 11, 2019) ....................................................9, 15

*Doe 1 v. GitHub, Inc.*,
    672 F. Supp. 3d 837 (N.D. Cal. 2023) .................................................................12

*Falkner v. Gen. Motors LLC*,
    393 F. Supp. 3d 927 (C.D. Cal. 2018) ...................................................................8

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
    756 F. Supp. 2d 1352 (N.D. Fla. 2010) ................................................................8

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    586 U.S. 296 (2019) ............................................................................................10

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
    2015 WL 263556 (D. Haw. Jan. 21, 2015) ............................................................8

*Gattoni v. Tibi, LLC*,
    254 F. Supp. 3d 659 (S.D.N.Y. 2017) ...........................................................10, 13

*Gwinn v. City of Chicago*,
    2025 WL 964089 (N.D. Ill. Mar. 31, 2025) ........................................................18

*Izmo, Inc. v. Roadster, Inc.*,
    2019 WL 13210561 (N.D. Cal. Mar. 26, 2019) ...................................................12

*Kadrey v. Meta Platforms, Inc.*,
    2025 WL 744032 (N.D. Cal. Mar. 7, 2025) .........................................................13

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
    2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) .......................................................8

*Logan v. Meta Platforms, Inc.*,
    636 F. Supp. 3d 1052 (N.D. Cal. 2022) ...............................................................12

*Mango v. BuzzFeed, Inc.*,
    970 F.3d 167 (2d Cir. 2020) ................................................................................12

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
    873 F.3d 1045 (9th Cir. 2017) ...............................................................................5

vii

*Med. Broad. Co. v. Flaiz*,
  2003 WL 22838094 (E.D. Pa. Nov. 25, 2003) ....................................................10

*Microsoft Corp. v. AT&T Corp.*,
  550 U.S. 437 (2007)..............................................................................................5

*Mills v. Netflix, Inc.*,
  2020 WL 548558 (C.D. Cal. Feb. 3, 2020) .........................................................18

*Morgan v. Associated Press*,
  2016 WL 6953433 (C.D. Cal. Mar. 16, 2016)......................................................18

*Nat. Res. Def. Council v. U.S. Env't Prot. Agency*,
  857 F.3d 1030 (9th Cir. 2017) ...............................................................................7

*New Era Publ'ns Int'l, ApS v. Henry Holt & Co.*,
  695 F. Supp. 1493 (S.D.N.Y. 1988) .....................................................................14

*New York Times Co. v. Microsoft Corp.*,
  2025 WL 1009179 (S.D.N.Y. Apr. 4, 2025) ..........................................................9

*In re Pangang Grp. Co., LTD.*,
  901 F.3d 1046 (9th Cir. 2018) ...............................................................................7

*Philpot v. Alternet Media, Inc.*,
  2018 WL 6267876 (N.D. Cal. Nov. 30, 2018) .....................................................17

*Philpot v. Kos Media LLC*,
  2018 WL 10399910 (N.D. Cal. Dec. 6, 2018)......................................................17

*Preston Wood & Assocs., LLC v. Cameron Architects, Inc.*,
  2018 WL 8732108 (S.D. Tex. Nov. 8, 2018) .......................................................12

*Righthaven LLC v. Hoehn*,
  716 F.3d 1166 (9th Cir. 2013) .............................................................................14

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ...............................................................................12

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*,
  524 F. Supp. 2d 1184 (C.D. Cal. 2007) .................................................................7

viii

*Tremblay v. OpenAI, Inc.*,
   716 F. Supp. 3d 772 (N.D. Cal. 2024)...................................................................9

**Statutes**

17 U.S.C. § 106................................................................................................7

17 U.S.C. § 107.............................................................................................4, 7

17 U.S.C. § 411(a) ......................................................................................4, 10

17 U.S.C. § 412..............................................................................................10

17 U.S.C. § 501(b) .........................................................................................10

17 U.S.C. § 504(c)(1)......................................................................................11

17 U.S.C. § 512................................................................................................2

17 U.S.C. § 1201..............................................................................................3

17 U.S.C. § 1202......................................................................................*passim*

17 U.S.C. § 1202(b) .................................................................................*passim*

17 U.S.C. § 1202(c) ..........................................................................3–6, 10, 11

17 U.S.C. § 1203(a) ........................................................................................10

**Other Authorities**

H.R. Rep. No. 105-551, pt. 1 (1998) .............................................................6, 7

H.R. Rep. No. 105-551, pt. 2 (1998) ...............................................................6

4 *Nimmer on Copyright* § 12A.10.....................................................................11

*Photographer Sends C&D To Something Awful Over Photo 'Shopped
   To Add A Butt To A Bird*, Techdirt (Dec. 10, 2013),
   https://www.techdirt.com/2013/12/10/photographer-sends-cd-to-
   something-awful-over-photo-shopped-to-add-butt-to-bird/...............................17

Remove, *Am. Heritage Coll. Dictionary* (3d ed. 1997).............................................6

Remove, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1997)........................6

Remove, *New Oxford Dictionary of English* (1998) .................................................6

Remove, *Webster's Third New Int'l Dictionary* (1993) ............................................6

S. Rep. No. 105-190 (1998).........................................................................................6

Cathay Smith, *Weaponizing Copyright*, 35 Harv. J.L. & Tech. 193
(2022)..........................................................................................................13, 14

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

Chamber of Progress is a tech-industry coalition devoted to a progressive society, economy, workforce, and consumer climate. Chamber of Progress backs public policies that will build a fairer, more inclusive country in which the tech industry can operate responsibly and fairly, and in which all people benefit from technological leaps. Chamber of Progress seeks to protect Internet freedom and free speech, to promote innovation and economic growth, and to empower technology customers and users. Chamber of Progress's work is supported by its corporate partners, *see* https://progresschamber.org/partners/, but its partners do not sit on its board of directors and do not have a vote on, or veto power over, its positions. Chamber of Progress does not speak for individual partner companies, and it remains true to its stated principles even when its partners disagree.

The Computer & Communications Industry Association ("CCIA") is an international, not-for-profit trade association representing a broad cross-section of communications, technology, and Internet-industry firms that collectively employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global

---

[1] Pursuant to Federal Rule of Appellate Procedure Rule 29(a)(4)(E), Chamber of Progress and CCIA certify that no person or entity, other than the *amici curiae*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. All parties have consented to the filing of this brief.

economy.  For more than 50 years, CCIA has promoted open markets, open systems, and open networks.   A list of CCIA members is available at https://www.ccianet.org/members.

The question certified for interlocutory appeal—whether 17 U.S.C. § 1202(b) includes an identicality requirement—is of profound importance.  An overly broad interpretation of § 1202(b) threatens to stifle both free expression and technological innovation, including specifically the development of generative AI tools, thereby upsetting the delicate balance that Congress struck between protecting creative works and promoting other important social and economic interests. *Amici* therefore submit this brief to urge this Court to affirm the district court and thereby keep § 1202(b) within its authorized bounds.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Congress enacted the Digital Millennium Copyright Act of 1998 ("DMCA") at the dawn of the digital era.  Aware of the immense promise and risk of the Internet as a medium for mass dissemination of information and of potentially infringing copies of creative works, Congress made in the DMCA three principal sets of amendments to the Copyright Act.  First, it sought to foster the development of online commerce and avoid the chilling effect of copyright liability by establishing safe harbors that shield online service providers from liability for infringing activity by users in exchange for expeditious removal upon compliant notification. *See* 17

2

U.S.C. § 512.  Second, it encouraged copyright owners to give greater access to their works in digital formats by providing them with legal protections against unauthorized access to their works and the circumvention of technological control measures.  *See* 17 U.S.C. § 1201.  Finally, it sought to make it harder for digital pirates to conceal mass infringement of works by making it unlawful to falsify, remove, or alter copyright management information ("CMI") or to distribute copies knowing the CMI had been falsified, removed, or altered, intending or knowing that it would conceal infringement.  *See* 17 U.S.C. § 1202.  This last set of amendments is the focus of this appeal.

As relevant here, § 1202(b) prohibits the "remov[al]" of CMI, which is defined as "information conveyed in connection with copies … of a work," 17 U.S.C. § 1202(c).  District courts across the country have correctly interpreted this provision as prohibiting only the removal of CMI attached to a copyright owner's existing work, and not as creating an affirmative obligation to include CMI on new works, even works that are substantially similar to another work.  That interpretation comports with the provision's plain meaning and best fits the provision's context and the DMCA's purpose.  The DMCA was enacted at the dawn of the digital era to combat mass digital piracy—the widespread, near-costless distribution of complete and perfect digital copies of songs, movies, and books with identifying information removed to conceal the infringement.  It was not intended to create a broad, universal

3

right of attribution attached to any work "substantially similar" to (Appellants' Br. 42) or merely "derivative" of (*id.* at 39 n.12) a prior work.

The requirement that CMI be removed from a copy is an essential safeguard against CMI claims run riot. If Plaintiffs' theory is adopted, almost any copyright infringement claim could also be pleaded as a CMI claim. After all, infringing works rarely include the CMI from prior works. And the temptation to plead a CMI claim alongside every infringement claim would be great: plaintiffs can (and do) use CMI claims to sidestep traditional copyright law requirements, such as the requirement that works be registered before suit, 17 U.S.C. § 411(a); avoid essential copyright limitations and exceptions, such as fair use, 17 U.S.C. § 107; and threaten far higher statutory damages, on a per-violation rather than per-work basis, 17 U.S.C. § 1203(c)(3).

What is more, abandoning this safeguard would disserve the purposes motivating the DMCA by chilling free expression and undermining digital innovation. Already, rightsholders are using dubious copyright claims and CMI claims to silence criticism, suppress speech, and extract nuisance settlements. Indeed, over the past decade, dubious CMI claims have been on the rise. Adopting Plaintiffs' reading of § 1202 would risk opening the floodgates and chilling all manner of lawful, creative speech. Moreover, it would significantly chill the development of generative artificial intelligence by creating a minefield of legal

4

uncertainty and potential liability for developers.  The spectre of potential liability is massive, as rightsholders will doubtless contend that each output of a generative AI system pretrained on copyrighted works is a separate "violation," triggering at least the minimum statutory damage award of \$2,500.  17 U.S.C. § 1203(c)(3).

Congress designed the DMCA to promote expression, innovation, and access to works in digital form, not to grant rightsholders a powerful super-copyright over any work bearing some resemblance to their own.  *See  Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1051 (9th Cir. 2017) (observing that "[t]he DMCA strikes a balance between the interests of 'copyright holders in benefitting from their labor,'" "'entrepreneurs in having the latitude to invent new technologies,'" and "'the public in having access [to] both'" (quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1037 (9th Cir. 2013)).  This Court should affirm.

## ARGUMENT

## I.    Section 1202(b) claims require removal of CMI from a copy, not the inclusion of CMI on any substantially similar work.

Congress enacted § 1202 of the DMCA with a clear and specific purpose:  to combat the growing problem of online piracy.  The DMCA was an effort by Congress to address "the ease with which pirates could copy and distribute a copyrightable work in digital form." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 458 (2007).  The statute was aimed at the "unique threat" posed by "the digital

5

environment," namely, that "pirates [could] reproduce and distribute perfect copies of works," H.R. Rep. No. 105-551, pt. 2, at 25 (1998), "virtually instantaneously," and at a "massive" scale, S. Rep. No. 105-190, at 8 (1998). Congress concluded that "[w]hile such rapid dissemination of perfect copies will benefit both U.S. owners and consumers, it will unfortunately also facilitate pirates who aim to destroy the value of American intellectual property." H.R. Rep. No. 105-551, pt. 1, at 9 (1998). Striking a balance between the interests of the public and of rightsholders, Congress therefore enacted § 1202 as a targeted tool against online piracy by making it illegal to intentionally remove CMI from digital works to conceal infringement.

The text of § 1202(b) reflects this targeted purpose. Section 1202(b) requires the "remov[al]" of CMI, i.e., "information conveyed in connection with copies … of a work," 17 U.S.C. § 1202(c). Contemporaneous dictionary definitions define "remove" as "[t]o take off," *Am. Heritage Coll. Dictionary* (3d ed. 1997), "[t]o get rid of," *Merriam-Webster's Collegiate Dictionary* (10th ed. 1997), or "eliminate," *The New Oxford Dictionary of English* (1998); *Webster's Third New Int'l Dictionary* (1993). Thus, under the statute's plain meaning, there must be a copy of a work with associated CMI that is then taken off. *See* S. Rep. No. 105-190, at 34 (1998) (explaining that § 1202 "merely protects the integrity of CMI if a party chooses to use it in connection with a copyrighted work by prohibiting its deliberate *deletion or alteration*" (emphasis added)). The creation of a new work without CMI, even one

6

that resembles an existing work, is not the removal of CMI. *See* OpenAI Br. 32-45; GitHub Br. 37-55.

This reading makes all the more sense "in light of the ... language and design of the [DMCA] as a whole," *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 857 F.3d 1030, 1036 (9th Cir. 2017). Section 1202 is one of two adjoining provisions from the DMCA concerned with the "'rapid dissemination of perfect copies,'" *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1198 (C.D. Cal. 2007) (quoting H.R. Rep. No. 105-551, pt. 1 at 9 (1998)). It is not a sweeping new attribution right requiring the reproduction of CMI any time some new content bears some resemblance to an original. Indeed, had Congress wanted to authorize penalties for creating a substantially similar work without including another's CMI, it could easily have done so expressly. But it did not.

This reading also makes the most sense of the other provisions in the Copyright Act. This Court presumes that "Congress did not intend to make any portion of a statute superfluous." *In re Pangang Grp. Co., LTD.*, 901 F.3d 1046, 1056 (9th Cir. 2018). Other provisions of the Copyright Act already address a copyright owner's rights to control the reproduction of works and the creation of derivative works, 17 U.S.C. § 106, as well as the limits of those rights, such as fair use, *id.* § 107. Yet if § 1202 were interpreted to require inclusion of CMI in any work "substantially similar" to (Appellants' Br. 42) or merely "derivative" of (*id.* at

39 n.12) a prior work, it would effectively displace ordinary copyright infringement claims. Congress intended § 1202 to deter large-scale digital piracy, not to create a para-copyright claim to be tacked on to every allegation of infringement or a super-copyright claim to replace ordinary infringement claims.

Recognizing § 1202(b)'s text, context, and purpose, district courts across the country have rejected attempts to expand § 1202(b) beyond its intended scope. These courts all recognize that § 1202(b) prohibits the removal of CMI from an existing work, not the failure to add CMI to a new work, even one similar to an existing work.

Many courts have reasoned that where the purported copy is not identical to the plaintiff's work, the mere similarity of the works is not evidence that CMI was actually removed. *E.g.*, *Kirk Kara Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020); *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035, 1057 (S.D. Cal. 2023); *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017).

A related set of cases rejected CMI-removal claims based on the reproduction of mere excerpts, finding that only removal of CMI from an actual copy of a work suffices. *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 938-39 (C.D. Cal. 2018); *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1356,

1359 (N.D. Fla. 2010) (excerpts); *Design Basics, LLC v. WK Olson Architects, Inc.*,
2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019).

More recently, and especially relevant here, a string of courts have rejected
§ 1202(b) CMI-removal claims based on the non-inclusion of CMI in the short,
generated output of generative AI tools. *See New York Times Co. v. Microsoft Corp.*,
2025 WL 1009179, at *19 (S.D.N.Y. Apr. 4, 2025); *Tremblay v. OpenAI, Inc.*, 716
F. Supp. 3d 772, 779-80 (N.D. Cal. 2024); *Andersen v. Stability AI Ltd.*, 2024 WL
3823234, at *8 (N.D. Cal. Aug. 12, 2024).

Text, context, and purpose all support the approach taken by the district court
here and by district courts around the country. This Court should affirm the district
court's correct interpretation of § 1202(b).

## II. Abandoning the identicality requirement would transform § 1202 from a targeted anti-piracy provision into a dangerous super-copyright.

Ensuring that CMI claims stay within the bounds set by Congress is especially
vital given that such claims are easier to bring, harder to defend, and eligible for
more powerful remedies than copyright infringement claims. Allowing CMI claims
based on works "substantially similar" to (Appellants' Br. 42) or merely "derivative"
of (*id.* at 39 n.12) a prior work risks creating a super-copyright that would radically
expand the power of rightsholders beyond what Congress intended.

Section 1202 claims are in some ways easier to bring than infringement
claims. For example, a copyright infringement claim may be brought only by an

9

"owner." 17 U.S.C. § 501(b). But a claim under § 1202 may be brought by "[a]ny person injured by a violation." 17 U.S.C. § 1203(a). What is more, before an owner may sue for copyright infringement, they must first register the work with the United States Copyright Office, 17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 309 (2019), and, if the owner has not registered the work "before the commencement of the infringement," the owner cannot obtain statutory damages or attorneys' fees, 17 U.S.C. § 412. By contrast, at least some courts have concluded that registration is not required for § 1202 claims. *E.g.*, *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 663 (S.D.N.Y. 2017) (collecting cases); *Med. Broad. Co. v. Flaiz*, 2003 WL 22838094, at * 3 (E.D. Pa. Nov. 25, 2003) ("While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA, however, are simply not copyright infringement claims and are separate and distinct from the latter").

Section 1202 claims are in many ways broader than copyright infringement claims. The scope of what may qualify as CMI is broad. *See* 17 U.S.C. § 1202(c). It includes "information identifying the work," "identifying information about[]" the author, a performer, a writer, or a director, "[t]erms and conditions for use of the work," or even "[i]dentifying numbers or symbols referring to such information or links to such information." *Id.* Such information qualifies as CMI when it is

10

"conveyed in connection with copies … of a work." *Id.* The omission of any of this material might give rise to an alleged § 1202 violation.

Defendants litigating § 1202 claims have fewer defenses available to them. Aside from the narrow circumstances for broadcast and cable, the statute offers no explicit defenses for removing CMI. Section 1202(b) does provide that liability only exists when one removes CMI or distributes works knowing CMI has been removed "without the authority of the copyright owner or law." 17 U.S.C. § 1202(b). But the scope of this provision is unsettled, including for example whether the "authority of the … law" means that copyright infringement defenses such as fair use apply to § 1202 claims. *See* 4 *Nimmer on Copyright* § 12A.10 (noting the lack of "guidance" on when removal may be authorized by law). This creates significant uncertainty about whether perfectly legitimate non-infringing uses of a work might nonetheless provoke a lawsuit under § 1202.

Most importantly, § 1202 claims can carry far stiffer statutory penalties than ordinary copyright infringement claims. For copyright infringement claims, provided the work is registered before infringement commenced, an owner can recover statutory damages of $750 to $30,000 for each infringed work. *See* 17 U.S.C. § 504(c)(1). But for § 1202 claims, the plaintiff can recover $2,500 to $25,000 "for each violation." 17 U.S.C. § 1203(c)(3)(B). Even a statutory minimum award per violation adds up quickly. For example, in one lawsuit where the

11

defendant sent out marketing emails with content from which CMI had been removed, the court awarded $2,500 for each email sent, for a total of $28,790,000. *Preston Wood & Assocs., LLC v. Cameron Architects, Inc.*, 2018 WL 8732108, at *2 (S.D. Tex. Nov. 8, 2018) (awarding $28,790,000, based on 11,516 violative emails). That amount is nearly 100 times more than what the maximum statutory damages award would have been for infringement of the copyrighted works at issue. *See id.* at *1 (stating that 11 works were at issue).

To be sure, Congress included in § 1202 a double-scienter requirement, *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018); *accord Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020), but that requirement has not been the check on claims run amok that Congress intended. Some district courts, including the court below, have been reluctant to enforce the mental-state requirement at the pleading stage, reasoning that "mental conditions generally need not be alleged with specificity." *E.g.*, *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 858 (N.D. Cal. 2023). These courts instead relegate the double-scienter requirement to "the summary judgment context." *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1064 (N.D. Cal. 2022); *accord Izmo, Inc. v. Roadster, Inc.*, 2019 WL 13210561, at *4 (N.D. Cal. Mar. 26, 2019) ("Whether [the defendant] knew or should have known that its activities would induce or enable an infringement of [the plaintiff's] rights is more suited to summary judgment.").

As a result, plaintiffs often survive dismissal with threadbare allegations about a defendant's state of mind. *Kadrey v. Meta Platforms, Inc.*, 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025) (permitting § 1202 claim to proceed where the allegations of scienter were "not particularly strong"); *Gattoni*, 254 F. Supp. 3d at 664 (permitting § 1202 claim to proceed where the allegations of scienter were "relatively sparse"). This procedural reality allows § 1202 claims to be used to initiate frivolous litigation that forces defendants into expensive and time-consuming discovery. The immense cost of litigation, combined with the threat of massive statutory damages, creates powerful leverage for plaintiffs to coerce settlements, chill speech, and stifle innovation, regardless of the merits of the underlying claim. Abandoning the identicality requirement would further exacerbate these problems.

## III. Without the identicality requirement, § 1202 claims threaten to chill free expression and stifle innovation.

Even with some form of the identicality requirement, § 1202 claims are on the rise. And without the identicality requirement, they risk becoming both a para-copyright claim tacked on to every allegation of infringement and a super-copyright claim that gives rightsholders control over secondary uses, including new technological uses, of copyrighted works that Congress never intended.

Bad actors often try to "weaponize copyright," Cathay Smith, *Weaponizing Copyright*, 35 Harv. J.L. & Tech. 193 (2022), by wielding it "as an aggressive

weapon to prevent the publication of embarrassing revelations and to obstruct criticism," *New Era Publ'ns Int'l, ApS v. Henry Holt & Co.*, 695 F. Supp. 1493, 1502 (S.D.N.Y. 1988) (Leval, J.).  Because copyright claims are "easy to assert" and "expensive to defend," they have been used by putative rightsholders as a means to "silence" criticism or "suppress" undesired speech.  Smith, *Weaponizing Copyright*, at 199-219 (collecting examples).

Others, described in some quarters as "copyright trolls," exploit copyright claims for financial gain.  Copyright trolls bring "claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation."  *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017).  Over the past decades, copyright trolls have expanded to exploit an ever-growing variety of works, including newspapers, photography, film, and home building plans.  *E.g.*, *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1168 (9th Cir. 2013) (newspapers); *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1069 (9th Cir. 2021) (photography); *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 992 (D.C. Cir. 2014) (films); *Design Basics*, 858 F.3d at 1097 (home building plans).

Section 1202 claims are especially ripe for abuse.  CMI claims, which have no pre-suit registration requirement and sky-high statutory damages, are unfortunately well-suited for coercing settlements.  *E.g.*, *Bell v. Milwaukee Bd. of*

14

*Sch. Dirs.*, 2022 WL 18276966, at \*10 (E.D. Wis. Dec. 21, 2022) (awarding attorneys' fees to the defendants after concluding a § 1202 plaintiff was a "copyright 'troll'").

Take the case of Design Basics, LLC, a Texas-based business that "holds registered copyrights in thousands of floor plans for suburban, single-family tract homes" and that has filed "more than 100 [infringement] suits in the last decade or so." *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 882 (7th Cir. 2021). According to the Seventh Circuit, the firm's business model consists of having its "employees trawl the Internet in search of targets for strategic infringement suits of questionable merit," leading that court to repeatedly brand Design Basics as a "copyright troll." *Id.*; *accord Design Basics*, 858 F.3d at 1097.

Initially focused on copyright infringement claims, Design Basics soon expanded into asserting § 1202 claims, alleging that floor plans resembling theirs were copies from which their CMI had been removed. *E.g.*, *Design Basics, LLC v. Mitch Harris Bldg. Co.*, 2021 WL 5563981, at \*13 (E.D. Mich. Nov. 29, 2021).[2]

---

[2] *See also Design Basics, LLC v. Van Prooyen Builders, Inc.*, 2021 WL 838348, at \*2 (N.D. Ind. Mar. 5, 2021); *Design Basics, LLC v. Landmark Communities, Inc.*, 2019 WL 3944437, at \*1 (S.D. Ohio Aug. 21, 2019); *Design Basics LLC v. Clayton Homes of Lafayette Inc.*, 2020 WL 9668708, at \*1 (N.D. Ind. Jan. 9, 2020); *Design Basics, LLC v. DJW & Assocs. of Michigan, Inc.*, 2019 WL 7584399, at \*1 (E.D. Mich. Aug. 6, 2019); *Design Basics, LLC v. Clayton Homes of Lafayette, Inc.*, 2019 WL 3402257, at \*1 (N.D. Ind. July 25, 2019); *Design Basics, LLC v. Big C Lumber Co. Inc.*, 2019 WL 3285958, at \*10 (N.D. Ind. July 22, 2019); *Design Basics, LLC*

Many courts correctly recognized the questionable merit of this theory and rejected the claims, *see id.*, but sometimes the claims survived motions to dismiss and even motions for summary judgment, *e.g.*, *Design Basics, LLC v. Ashford Homes, LLC*, 2018 WL 6620438, at *16 (S.D. Ohio Dec. 18, 2018) (denying defendants' motion for summary judgment on CMI-removal claims). Removing one of the few arguments defendants have to guard against frivolous § 1202 claims would only encourage copyright trolls like Design Basics and aid their attempts to extract unjustified settlements.

What is more, without an identicality requirement, § 1202 could be used by copyright holders to control virtually all uses of their work. An owner could use a § 1202 claim to threaten a parody, a negative review, or a transformative work of art, simply because the use involved altering some portion of the original work

---

*v. MTF Assocs., Inc.*, 2019 WL 1405290, at *1 (M.D. Pa. Mar. 28, 2019); *Design Basics, LLC v. WK Olson Architects, Inc.*, 2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019); *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 2018 WL 1583103, at *2 (N.D. Ohio Mar. 30, 2018); *Design Basics, LLC v. Lexington Homes, Inc. Acuity a Mut. Ins. Co.*, 2016 WL 8116897, at *5 (E.D. Wis. Sept. 30, 2016); *Design Basics LLC v. Campbellsport Bldg. Supply, Inc.*, 2016 WL 3189202, at *7 (E.D. Wis. June 7, 2016); *Design Basics LLC v. Best Built Inc*, 2016 WL 1060253, at *1 (E.D. Wis. Mar. 15, 2016); *Design Basics LLC v. Fox Cities Constr. Corp. Selective Ins. Co. of the Se.*, 2016 WL 5485185, at *1 (E.D. Wis. Feb. 9, 2016); *Design Basics LLC v. J & V Roberts Invs., Inc.*, 130 F. Supp. 3d 1266, 1270 (E.D. Wis. 2015); *Design Basics, LLC v. Cypress Homes & Realty, LLC*, 2013 WL 6044395, at *1 (E.D. Wis. Nov. 14, 2013); *Design Basics, LLC v. Chelsea Lumber Co.*, 2013 WL 3471142, at *1 (E.D. Mich. July 10, 2013); *Design Basics, LLC v. Roersma & Wurn Builders, Inc.*, 2012 WL 1830129, at *1 (W.D. Mich. Apr. 23, 2012).

16

without including the original's CMI, regardless of how different the final product would be.  The threat of costly litigation under § 1202, with its substantial statutory damages, creates a significant chilling effect on individuals and organizations relying on fair use.  Fearing a lawsuit, these speakers may opt to self-censor and avoid using copyrighted works in ways that are legally permissible and socially beneficial.  Sadly, this threat is all too real.

Everyday activities like creating and sharing memes, which often involve cropping or altering images and may remove CMI in the process, could expose millions of everyday users to legal risk.  Indeed, lawsuits, or threats of lawsuits, asserting CMI claims are on the rise.  *See, e.g.*, *Bell*, 2022 WL 18276966, at *7 (Section 1202 claim based on use of a photograph in a meme); *Philpot v. Kos Media LLC*, 2018 WL 10399910, at *1 (N.D. Cal. Dec. 6, 2018) (same); *Philpot v. Alternet Media, Inc.*, 2018 WL 6267876, at *1 (N.D. Cal. Nov. 30, 2018) (same); *see also* Tim Cushing, *Photographer Sends C&D To Something Awful Over Photo 'Shopped To Add A Butt To A Bird*, Techdirt (Dec. 10, 2013), https://www.techdirt.com/2013/12/10/photographer-sends-cd-to-something-awful-over-photo-shopped-to-add-butt-to-bird/.

Journalists, critics, and documentarians often use excerpts of works for reporting and commentary.  If any modification that results in the incidental removal of CMI (like using a screenshot of a video or a cropped portion of a photo) arguably

17

creates liability, § 1202 would become a powerful tool for the suppression of critical analysis and reporting. *See, e.g.*, *Gwinn v. City of Chicago*, 2025 WL 964089, at *7 (N.D. Ill. Mar. 31, 2025) (Section 1202 claim based on use of clip in a compilation about protests shared with the press and posted to social media); *Mills v. Netflix, Inc.*, 2020 WL 548558, at *1 (C.D. Cal. Feb. 3, 2020) (Section 1202 claim based on use of a video clip in a documentary); *Morgan v. Associated Press*, 2016 WL 6953433, at *1 (C.D. Cal. Mar. 16, 2016) (Section 1202 claim based on use of a photograph in a news magazine). And because news and criticism is often widely disseminated, the availability of statutory damages for each violation would risk ruinous liability.

Abandoning the identicality requirement would also risk chilling innovation in the emerging space of generative AI. Any reproduction of part of a work or content derived from a work in the output of a generative AI model might give rise to a § 1202 violation, which plaintiffs would argue triggers a minimum award of $2,500 in statutory damages per output. Given that the leading generative AI services field hundreds of millions of queries each day, the spectre of § 1202 liability could stop generative AI development in its tracks. Of course, startups and smaller websites would be especially hard hit, because they are less able to bear the costs of defending against frivolous claims and because the threat of liability deters investors. More generally, the lack of a clear, limiting principle like identicality creates

massive legal uncertainty for anyone who disseminates digital content, from individual users, to small bloggers, to leading websites.

## CONCLUSION

For the foregoing reasons, *Amici* respectfully urge the Court to affirm the district court's order dismissing Plaintiffs-Appellants' § 1202(b) claim.

DATED: July 18, 2025                    Respectfully submitted,

*/s/ Paul N. Harold*

PAUL N. HAROLD
*Wilson Sonsini*
*Goodrich & Rosati, PC*
*1700 K Street N.W.*
*Washington, DC 20006*
*(202) 973-8000*
*pharold@wsgr.com*

*Counsel for Amici Curiae*
*Chamber of Progress; Computer & Communications Industry Association*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  24-7700

I am the attorney or self-represented party.

**This brief contains**  4,595  **words,** including  0  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ Paul N. Harold   **Date**  07/18/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 18, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 18, 2025                     By: */s/ Paul N. Harold*
                                                  Paul N. Harold