No. 24-7700

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

J. DOE, 1; J. DOE, 2-5, individually and on behalf of all others similarly situated,

PLAINTIFFS -APPELLANTS,

v.

GITHUB, INC., a Delaware corporation; MICROSOFT CORPORATION, a Washington corporation; OPENAI, INC., a Delaware nonprofit corporation; OPENAI, LP, a Delaware limited partnership; OPENAI GP, LLC, a Delaware limited liability company; OPENAI STARTUP FUND GP I, LLC, a Delaware limited liability company; OPENAI STARTUP FUND I, LP, a Delaware limited partnership; OPENAI STARTUP FUND MANAGEMENT, LLC, a Delaware limited liability company; OPENAI OPCO, LLC; OPENAI, LLC; OPENAI GLOBAL, LLC; OAI CORPORATION; OPENAI HOLDINGS, LLC; OPENAI HOLDCO, LLC; OPENAI INVESTMENT; OPENAI STARTUP FUND SPV I, LP; OPENAI STARTUP FUND SPV GP I, LLC,

DEFENDANTS- APPELLEES.

On Appeal from the United States District Court
for the Northern District of California, Oakland
22-cv-06823-JST
The Honorable Jon S. Tigar

## BRIEF OF AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION AND PUBLIC KNOWLEDGE IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

Corynne McSherry
Victoria Noble
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Email: corynne@eff.org
Telephone: (415) 436-9333
Fax: (415) 436-9993
*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amici state that they do not have a parent corporation and that no publicly held corporation owns 10% or more of their stock.

Dated: July 18, 2025                    By:  /s/ *Corynne McSherry*
                                             Corynne McSherry

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................i

TABLE OF CONTENTS ......................................................... ii

TABLE OF AUTHORITIES.................................................... iii

STATEMENT OF INTEREST OF AMICI ...................................1

INTRODUCTION.................................................................1

ARGUMENT ......................................................................2

    I.    THE IDENTICALITY RULE HELPS ENSURE THAT SECTION 1202 ADHERES TO ITS CORE PURPOSE: INHIBITING INFRINGEMENT................................................................2

    II.    IDENTICALITY SERVES THE PURPOSES OF COPYRIGHT BY LIMITING ABUSIVE SECTION 1202 CLAIMS ..............................8

        A.    Litigation Threats as Business Practice ......................8

        B.    The "Identicality" Rule Can Help Deter Section 1202(b) Trolling .......................................................12

    III.    CLOSE ATTENTION TO STATUTORY LIMITS ALLOWS FAIR USE TO PLAY ITS PROPER ROLE AS A BACKSTOP FOR UNLICENSED CREATIVITY AND INNOVATION ......................14

CONCLUSION ..................................................................19

CERTIFICATE OF COMPLIANCE ....................................20

CERTIFICATE OF SERVICE.............................................21

## TABLE OF AUTHORITIES

**Cases**

*AF Holdings, LLC v. Does 1–1058,*
  752 F.3d 990 (D.C. Cir. 2014) ...............................................................9, 11

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc., et al.*,
  896 F.3d 437 (D.C. Cir. 2018) ...................................................................16

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
  27 F.4th 313 (5th Cir. 2022) ........................................................................9

*Bell v. Wilmott Storage Servs., LLC*,
  12 F.4th 1065 (9th Cir. 2021) ...............................................................9, 12

*Bldg. Officials & Code Adm. v. Code Technologies, Inc.*,
  628 F.2d 730 (1st Cir. 1980) ......................................................................16

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ......................................................................10

*Campbell v Acuff-Rose Music Inc.*,
  510 U.S. 569 (1994)......................................................................................7

*Craig v. UMG Recordings, Inc.*,
  380 F. Supp. 3d 324 (S.D.N.Y. 2019)........................................................13

*Crowley v. Jones*,
  608 F. Supp. 3d 78 (S.D.N.Y. 2022)............................................................4

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)......................................................................................18

*Design Basics, LLC v. Lexington Homes, Inc.*,
  858 F.3d 1093 (7th Cir. 2017) ..................................................................8, 9

*Doe 1 v. GitHub, Inc.*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) .......................................................14

*Facilities Guidelines Institute, Inc. v. UpCodes, Inc.*,
  677 F. Supp. 3d 955 (E.D. Mo. 2023)........................................................16

*Faulkner Press, LLC v. Class Notes, LLC*,
  756 F. Supp. 2d 1352 (N.D. Fla. 2010).................................................4, 13

*Fischer v. Forrest*,
  286 F. Supp. 3d 590 (S.D.N.Y. 2018).........................................................5

*Fischer v. Forrest*,
     968 F.3d 216 (2d Cir. 2020).................................................................3, 5

*Georgia v. Public.Resource.Org, Inc.*,
     590 U.S. 255 (2020)................................................................................16

*Google LLC v. Oracle Am., Inc.*,
     593 U.S. 1 (2021)...............................................................................7, 15

*Green v. U.S. Dep't of Just.*,
     111 F.4th 81 (D.C. Cir. 2024) ................................................................13

*Kadrey v. Meta Platforms, Inc.*,
     2025 WL 1786418 (N.D. Cal. June 27, 2025) ........................................3

*Kelly v. Arriba Soft Corp.*,
     336 F.3d 811 (9th Cir. 2003) ...................................................................6

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
     2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ........................................4

*Lenz v. Universal Music Corp.*,
     815 F.3d 1145 (9th Cir. 2016) .................................................................3

*Liebowitz v. Bandshell Artist Mgmt.*,
     6 F.4th 267 (2d Cir. 2021) ......................................................................9

*Liebowitz v. Bandshell Artist Mgmt.*,
     858 F. App'x 457 (2d Cir. 2021) .............................................................8

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
     572 U.S. 915 (2014).............................................................................18

*Live Face on Web, LLC v. Cremation Soc'y of Illinois, Inc.*,
     77 F.4th 630 (7th Cir. 2023) ...........................................................10, 12

*Malibu Media LLC v. John Doe subscriber assigned IP address 24.183.51.58*,
     2013 WL 4821911 (W.D. Wis. Sept. 10, 2013) ...................................11

*Marano v. Metropolitan Museum of Art*,
     472 F. Supp. 3d 76 (S.D.N.Y. 2020).....................................................11

*Matter of Liebowitz*,
     226 A.D.3d 117 (2024) .........................................................................10

*New York Times Co. v. Microsoft Corp.*,
     2025 WL 1009179 (S.D.N.Y. Apr. 4, 2025)............................................5

*Perfect 10, Inc. v. Amazon, Inc.*,
     508 F.3d 1146 (9th Cir. 2007) .................................................................6

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
  602 F.3d 57 (2d Cir. 2010)......................................................................14

*Righthaven LLC v. Democratic Underground, LLC*,
  791 F. Supp. 2d 968 (D. Nev. 2011)..............................................8, 17

*Righthaven LLC v. Hoehn*,
  716 F.3d 1166 (9th Cir. 2013) ..............................................................17

*Rock v. Enfants Riches Deprimes, LLC*,
  2020 WL 468904 (S.D.N.Y. Jan. 29, 2020) ........................................11

*Schneider v. YouTube, LLC*,
  649 F. Supp. 3d 872 (N.D. Cal. 2023) ................................................14

*Sega Enterprises Ltd. v. Accolade, Inc.*,
  977 F.2d 1510 (9th Cir. 1992) ................................................................6

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) ................................................................6

*Sheldon v. Plot Com.*,
  2016 WL 51070721 (E.D.N.Y. Aug. 26, 2016)..................................13

*Silvers v. Sony Pictures Ent., Inc.*,
  402 F.3d 881 (9th Cir. 2005) ................................................................14

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984)................................................................................18

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ..................................................................4

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc.*,
  524 F. Supp. 2d 1184 (C.D. Cal. 2007) ................................................3

*Tresóna Multimedia, LLC v. Burbank High School Vocal Music Assn.*,
  953 F.3d 638 (9th Cir. 2020) ..................................................................7

*Usherson v. Bandshell Artist Mgmt.*,
  2020 WL 3483661 (S.D.N.Y. June 26, 2020) ........................8, 10, 11

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
  293 F.3d 791 (5th Cir. 2002) ................................................................16

*Viral DRM v. Seven West Media*,
  768 F. Supp. 3d 1025 (N.D. Cal. Feb 28, 2025) ..........................5, 13

*Walsh v. Townsquare Media, Inc.*,
  2022 WL 1302216 (S.D.N.Y. May 2, 2022) ..............................10, 11

*We the Protesters, Inc. v. Sinyangwe*,
   724 F. Supp. 3d 281 (S.D.N.Y. 2024)...............................................13

*Yang v. Mic Network, Inc.*,
   405 F. Supp. 3d 537 (S.D.N.Y. 2019)...............................................11

**Statutes**

17 U.S.C. § 1202 ......................................................................... *passim*

17 U.S.C. § 1203 ...............................................................................13

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 8 ..............................................................9

**Legislative Materials**

S. Rep. No. 105-190 (1998).................................................................3

**Other Authorities**

Catherine Stihler, *Do Not Feed the Trolls*, Creative Commons (Feb. 8, 2022) ......12

Cory Doctorow, *A Bug in Early Creative Commons Licenses Has Enabled a New Breed of Superpredator*, Medium (Jan. 24, 2022) ...............................................12

Corynne McSherry and Kit Walsh, *One Weird Trick to Improve Copyright: Fix EULAs*, Electronic Frontier Foundation (Jan. 17, 2017) ....................................18

Federal Trade Commission, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions* (May 2021) ...................................................................18

Joe Mullin, *File-Sharing Lawsuit Numbers Drop by More than Half*, Ars Technica (July 19, 2016) ...............................................................................11

Kurt Opsahl, *Righthaven Ordered to Pay $5,000 in Sanctions for Its Misrepresentations to Court*, Electronic Frontier Foundation (July 15, 2011) ...17

Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105 (2015).........................................................................................9

*U.S. v. Steele*, No. 16-cv-00334, Plea Agreement and Sentencing Stipulations, ECF No. 43 (D. Minn. Mar. 6, 2017)..........................................................8

## STATEMENT OF INTEREST OF AMICI[1]

The Electronic Frontier Foundation ("EFF") is a non-profit civil liberties organization that has worked for 35 years to protect privacy, innovation, and free expression in the digital world. EFF and its more than 33,000 dues-paying members have a strong interest in helping the courts and policymakers ensure that copyright law serves the interests of creators, innovators, and the general public.

Public Knowledge is a nonprofit organization that is dedicated to preserving the openness of the Internet and the public's access to knowledge, promoting creativity through balanced intellectual property rights, and upholding and protecting the rights of consumers to use innovative technology lawfully.

## INTRODUCTION

Section 1202 of the Digital Millennium Copyright Act was intended to serve as a backstop for the traditional copyrights in the digital age—not to create a new, more expansive right to inhibit otherwise non-infringing uses. On Plaintiffs' view, however, Section 1202 effectively displaced the well-established copyright balance by creating potential liability for non-infringing uses, such as fair uses, if those new uses merely omit copyright management information ("CMI"). Most fair users can

---

[1] Pursuant to Federal Rule of Appellate Procedure Rule 29(a)(4)(E), amici certify that no person or entity, other than amici curiae, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. All parties have consented to the filing of this brief.

1

ultimately avoid that liability by operation of Section 1202's other limits. But the spectre of litigation, backed by threats of high and unpredictable statutory penalties, will be enough to induce many to settle. Indeed, an entire legal industry has emerged to apply that kind of pressure, with no corollary benefit to creativity or innovation.

Section 1202 was never intended to give rightsholders control over non-infringing uses, or to establish a new attribution right. Nor does the text of the provision support such an expansive interpretation. Section 1202 repeatedly refers to "works" and "copies of works"—not "substantially similar" excerpts or new adaptations—and its reference to "removal or alteration" contemplates actions taken with respect to existing works, not new ones. Congress could have chosen otherwise. Wisely it did not, thereby ensuring that rightsholders couldn't leverage the omission of CMI to punish otherwise lawful re-uses of a work.

Copyright is famously a creature of statute, to be strictly construed so that it can serve its purpose. Amici urges the Court to decline Plaintiffs' invitation to depart from the text and purpose of Section 1202 by creating a new, independent, right of attribution.

## ARGUMENT

I. **THE IDENTICALITY RULE HELPS ENSURE THAT SECTION 1202 ADHERES TO ITS CORE PURPOSE: INHIBITING INFRINGEMENT**

A key purpose of Section 1202(b) was to give copyright owners an additional

tool to identify and inhibit potential *infringement*. S. Rep. No. 105-190, at 8 (1998) ("Due to the ease with which digital works can be copied and distributed worldwide virtually instantaneously, copyright owners will hesitate to make their works readily available on the Internet without reasonable assurance that they will be protected against massive piracy."); *see also Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc*., 524 F. Supp. 2d 1184, 1202 n.17 (C.D. Cal. 2007) (observing that Congress enacted Section 1202 to "give an added layer of protection to certain works that were vulnerable to infringement due to advances in modern technology, namely the internet").

That intention is reflected in the statutory text, which repeatedly ties liability to intentional activity undertaken "without the authority of the copyright owner *or the law*." 17 U.S.C. § 1202 (emphasis added). This language recognizes that the removal of CMI may be authorized by, *inter alia*, Section 107. *Lenz v. Universal Music Corp.,* 815 F.3d 1145, 1151 (9th Cir. 2016) ("Fair use is not just excused by the law, it is wholly authorized by the law.") As a judge in the Northern District of California recently explained:

> It does not make sense that Congress would have wanted to exempt secondary users who make a fair use from infringement liability, only to open them back up to DMCA liability if they removed some boilerplate in doing so.

*Kadrey v. Meta Platforms, Inc.*, 2025 WL 1786418, at *1 (N.D. Cal. June 27, 2025); *see also Fischer v. Forrest*, 968 F.3d 216, 223 (2d Cir. 2020) (to state a Section

3

1202(b)(1) claim, plaintiffs must allege "(1) the existence of CMI *on the allegedly infringed work*, (2) the removal or alteration of that information and (3) that the removal was intentional") (emphasis added). It is reflected as well in the requirement under Section 1202(b) that a defendant must know or have reason to know its actions would "induce, enable, facilitate or conceal *an infringement*." 17 U.S.C. 1202(b) (emphasis added). *See also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018) ("[T]he plaintiff must provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI.").

The identicality rule furthers that purpose. If Congress intended Section 1202 to help combat infringing uses of *existing works*, it makes sense to cabin liability to the removal or alteration of CMI from those existing works in order to generate otherwise identical *copies,* not adaptations, likely fair uses, or reproductions of mere portions of works. *See, e.g., Kirk Kara Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (collecting cases); *see also, e.g., Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022) (superimposing name of recording artist over heavily modified photograph on album cover did not alter photo's CMI in violation of Section 1202(b)); *Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) (failing to include CMI from textbooks and course website in compilations of student notes for college course did not violate

Section 1202(b) because "note packages" were a "different product"); *Fischer v. Forrest*, 286 F. Supp. 3d 590, 609 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020) (using four phrases from brochure in distinct advertisement did not violate DMCA).

As Defendants note, the identicality rule, colloquial or not, helps identify whether CMI has been removed. OpenAI Br. at 34. But it also offers an objective way to screen out likely non-infringing *uses* of works—one that is desperately needed given that a plaintiffs can bring a Section 1202 claim for statutory damages without registration or proof of ownership. *See Viral DRM v. Seven West Media*, 768 F. Supp. 3d 1025, 1031 (N.D. Cal. Feb 28, 2025). The distribution of identical copies is precisely the kind of "massive piracy" Section 1202 was designed to prevent; the distribution of new works, particularly fair uses, is not. Indeed, many classic fair uses will involve the removal of CMI almost by definition, such as extracting an excerpt of a book or video for use in a review, or taking a photograph of a mural for use in a documentary about political art. *New York Times Co. v. Microsoft Corp.*, 2025 WL 1009179, at *19 (S.D.N.Y. Apr. 4, 2025) ("Allowing DMCA claims to survive when the distributed work is not 'close to identical' to the original would risk boundless DMCA liability, including liability for any person who distributes only portions of an article—e.g., various block quotes—without including CMI.")

Plaintiffs' proposal, by contrast, invites expensive litigation risks for any

number of non-infringing uses. Indeed, absent an identicality requirement, multiple adjudicated fair uses could have technically run afoul of Section 1202. These include:

    a. *Reverse engineering.* In *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1521–27 (9th Cir. 1992), the defendant disassembled Sega cartridges' object code and reverse engineered the mechanism necessary to manufacture cartridges compatible with the Sega Genesis console. The Court held Accolade's use was fair. However, the intermediate reverse-engineering necessarily involved stripping CMI.

    b. *Search engines.* In *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 817–22 (9th Cir. 2003) and *Perfect 10, Inc. v. Amazon, Inc.*, 508 F.3d 1146, 1163–68 (9th Cir. 2007), the Ninth Circuit held that publishing thumbnails of images in search engine results was fair use. The uses were lawful, even though the users removed CMI.

    c. *Artistic transformational uses.* In *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175–80 (9th Cir. 2013), a band captured and remixed street art in the background of a video but did not include CMI in the remixed version. The use was held to be fair, but the band could have faced an additional Section 1202(b) claim absent an identicality requirement.

      d. *Educational fair uses*. In *Tresóna Multimedia, LLC v. Burbank High School Vocal Music Assn.*, 953 F.3d 638, 647–52 (9th Cir. 2020), a high school music director commissioned a music arranger to create custom sheet music, including a rearranged chorus and small segments of a verse from a copyrighted song. Again, the use was found to be fair, but on Plaintiffs' theory, the high school could have been forced to litigate a second claim under Section 1202.

These cases might still have been resolved on the ground that the removal or alteration was authorized by law, *i.e.*, Section 107. Here, as well, if this case is not resolved on the narrow question presented in this appeal, it can still be resolved in Defendants favor later on multiple grounds, including fair use. *See* GitHub Br. at 60–63; *see Google LLC v. Oracle Am., Inc.,* 593 U.S. 1, 30–32, 39–40 (2021) (finding uses of functional code particularly likely to be fair).

     But forcing fair users to rely on a costly and often uncertain affirmative defense to a Section 1202 claim can't be correct. It defies common sense to imagine that Congress intended to create breathing space for new creativity in Section 107, *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994), only to create a new path to litigation with Section 1202.

## II.  IDENTICALITY SERVES THE PURPOSES OF COPYRIGHT BY LIMITING ABUSIVE SECTION 1202 CLAIMS

Well-resourced defendants, like GitHub and OpenAI, can afford to hire lawyers to litigate Section 1202 cases through appeals and trial; lucky ones can find pro bono lawyers. Unfortunately, an entire industry now exists to take advantage of those who fit into neither category. Plaintiffs' new attribution right will help them do it. The identicality rule, by contrast, offers an important, if imperfect, shield against that abuse.

### A.  Litigation Threats as Business Practice

Leveraging the expense of litigation and the risk of high statutory damages, law firms known as "copyright trolls" use copyright claims to extort settlement payments from large numbers of individuals. *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017). This predatory business model is highly lucrative: trolling schemes have collected millions in payments to settle often-specious claims.[2] *See, e.g. AF Holdings, LLC v. Does 1–1058*, 752 F.3d at 990, 991–

---

[2] *See, e.g.*, *U.S. v. Steele*, No. 16-cv-00334, Plea Agreement and Sentencing Stipulations, ECF No. 43, at 2 (D. Minn. Mar. 6, 2017), https://embed.documentcloud.org/documents/3492718-Gov-Uscourts-Mnd-160889-43-0/ (multi-million dollar fraud scheme to extort fraudulent copyright settlements by deceiving courts); *Righthaven LLC v. Democratic Underground, LLC,* 791 F. Supp. 2d 968, 979 (D. Nev. 2011) ("flagrant misrepresentation" in approximately 200 cases); *Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, at *1, *11–22 (S.D.N.Y. June 26, 2020), *aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. 2021), *and aff'd sub nom.*

8

93, 996–97 (D.C. Cir. 2014) (law firm made $15 million by "manipulat[ing] judicial procedures" and threatening more than a thousand internet users with "bad faith" copyright claims).[3]

The lawyers and litigants involved are in "the business of litigation," rather than defending copyrights. *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1082 (9th Cir. 2021) (Clifton and Wardlaw, JJ., concurring) (quotation omitted); *see also Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 326 (5th Cir. 2022) ("serial litigant" engaged in "business model of litigation" was "not the typical copyright plaintiff seeking a 'fair return for [his] creative labor.'") (citation omitted). Their business model is "far removed from the goals of the Constitution's intellectual property clause to 'promote the Progress of Science and useful Arts.'" *Design Basics, LLC*, 858 F.3d at 1097 (quoting U.S. Const. art. I, § 8, cl. 8).

Indeed, copyright trolls actively undercut that goal by targeting fair uses,

---

*Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021) ("copyright troll" was "frequently sanctioned" for myriad "violations in scores of cases," including lying to courts "repeatedly and under oath," filing false and falsified documents, and bringing and maintaining frivolous copyright lawsuits in bad faith).

[3] *See also* Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105, 1119-21 (2015), https://ilr.law.uiowa.edu/sites/ilr.law.uiowa.edu/files/2023-02/ILR-100-3-Sag.pdf ("The credible threat of damages as high as $150,000 makes any real risk of being found liable for copyright infringement intolerable for anyone who is not completely insolvent or staggeringly wealthy.")

including parodies, educational content, software code, and news reporting,[4] inflicting substantial litigation costs on fair use defendants before claims are dismissed. *See, e.g., Live Face on Web*, 77 F.4th at 634–35 (multiple unsuccessful motions to dismiss were a "common step" on the way to fair use decision against "copyright troll"); *Walsh*, 2022 WL 1302216, at *2–3 (copyright troll "made grossly overinflated settlement demands" and engaged in bad faith conduct to leverage payment for a fair use). These undue costs chill creativity and expression. For example, the Liebowitz Law Firm filed approximately 2,500 copyright infringement lawsuits in little more than four years. *Usherson,* 2020 WL 3483661, at *17; *Matter of Liebowitz*, 226 A.D.3d 117, 119 (2024), *leave to appeal denied*, 43 N.Y.3d 902 (2025). A staggering number of these cases were obviously meritless, due to the firm's "regular practice" of filing complaints without checking basic, easily verifiable facts, and its "pattern" of misrepresenting or omitting fatal facts as part of a "broader strategy to use the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits." *Usherson,* 2020 WL 3483661, at *8, *18.; *Rock v.*

---

[4] *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 691 (7th Cir. 2012) ("South Park" parody of viral video was fair use); *Bell*, 27 F.4th at 325–26 (public school district's tweet of inspirational book passage "for the laudable purpose of motivating students to succeed" was fair use); *Live Face on Web, LLC v. Cremation Soc'y of Illinois, Inc.*, 77 F.4th 630, 633–35 (7th Cir. 2023) (fair use of "piece of computer code"); *Walsh v. Townsquare Media, Inc.*, 2022 WL 1302216, at *2 (S.D.N.Y. May 2, 2022) (incidental use in context of news reporting was fair use).

*Enfants Riches Deprimes, LLC*, 2020 WL 468904, at *4 n.6 (S.D.N.Y. Jan. 29, 2020). Several of these cases targeted clear fair uses, and were ultimately dismissed on fair use grounds. *See, e.g., Walsh*, 2022 WL 1302216, at *2, *4 (collecting cases; rejecting "objectively unreasonable" position that incidental use of photograph in news reporting was "anything but fair"); *Marano v. Metropolitan Museum of Art*, 472 F. Supp. 3d 76, 88 (S.D.N.Y. 2020), *aff'd*, 844 F. App'x 436 (2d Cir. 2021) (fair use of photograph in online museum exhibition); *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 548 (S.D.N.Y. 2019) (fair use of photograph in commentary and criticism).

Courts have sought to discourage this business model by enforcing procedural limitations, sanctioning trolls, and referring trolls to prosecutors for investigation. *See, e.g., Usherson*, 2020 WL 3483661, at *1 (collecting cases); *AF Holdings*, 752 F.3d at 993, 996-99; *Ingenuity 13 LLC*, 2013 WL 1898633, at *4–6; *Malibu Media LLC v. John Doe subscriber assigned IP address 24.183.51.58*, 2013 WL 4821911, at *5 (W.D. Wis. Sept. 10, 2013); Joe Mullin, *File-Sharing Lawsuit Numbers Drop by More than Half*, Ars Technica (July 19, 2016).[5] And courts have emphasized the importance of awarding attorney's fees to fair users who "fight rather than pay the troll a modest licensing fee," as a "reward" for "exposing the troll's unlawful

---

[5] Available at https://arstechnica.com/tech-policy/2016/07/file-sharing-lawsuits-drop-by-more-than-half/.

business strategy." *Live Face on Web*, 77 F.4th at 633–34 (cleaned up).

Nevertheless, these efforts have not been entirely successful. For example, trolls now routinely send auto-generated demand letters over outdated, often forgotten uses of photos on websites and/or photographs posted in obscure locations, where a "reverse image search" for a specific photograph will find them, but a general search engine query or human visitor likely will not. (*See Bell*, 12 F.4th at 1069 & n.4, for an explanation of a reverse image search.) Such postings frequently cause little or no monetary harm to rightsholders, offer little to no benefit to the website creator, and would normally not merit litigation. Further, auto-generated copyright demands commonly target non-infringing uses. Indeed, some trolls developed an entire business model around bad faith enforcement of Creative Commons licensed works. *See* Catherine Stihler, *Do Not Feed the Trolls*, Creative Commons (Feb. 8, 2022).[6]

## B.    The "Identicality" Rule Can Help Deter Section 1202(b) Trolling

Not surprisingly, notorious copyright trolls have already tried to monetize Section 1202(b). *Craig v. UMG Recordings, Inc*., 380 F. Supp. 3d 324, 337–38

---

[6] Available at https://creativecommons.org/2022/02/08/copyleft-trolls/; *see also* Cory Doctorow, *A Bug in Early Creative Commons Licenses Has Enabled a New Breed of Superpredator*, Medium (Jan. 24, 2022), https://doctorow.medium.com/a-bug-in-early-creative-commons-licenses-has-enabled-a-new-breed-of-superpredator-5f6360713299.

(S.D.N.Y. 2019). Those efforts rely on not only the expense of litigation but the threat of statutory damages, paired with the absence of ownership and registration requirements. 17 U.S.C. § 1203(c)(3)(B); *Viral DRM*, 768 F. Supp. 3d at 1031; *see also, e.g., Sheldon v. Plot Com*., 2016 WL 5107072, at *1 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (awarding statutory damages of $500,000 for eleven uses of a single photograph).

The identicality rule helps limit this kind of abuse by allowing potential parties (and courts) to quickly identify likely invalid claims. This provides a path to early dismissal, and minimizes the costs and uncertainties inherent in other, more fact-intensive defenses. *See, e.g., We the Protesters, Inc. v. Sinyangwe*, 724 F. Supp. 3d 281, 296–97 (S.D.N.Y. 2024) (dismissing Section 1202 claim based on "straightforward" analysis of "minor modifications" that rendered modified map graphic "distinct from" the original).

Fair use, for example, often "eludes crisp definition," and requires a "notoriously fact sensitive analysis that typically cannot be resolved without a trial." *Green v. U.S. Dep't of Just*., 111 F.4th 81, 88 (D.C. Cir. 2024) (quotations omitted); *see also, e.g., Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp. 2d 1352, 1358–60 (N.D. Fla. 2010) (court relied on a version of the identicality rule to dismiss plaintiffs' Section 1202 claims, but found that fact disputes precluded summary judgment on fair use). And while Section 1202's scienter requirements also provide

important limits on Section 1202 claims, courts are often unwilling to grant early dismissals based on scienter, as the district court declined to do here. *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 858–59 (N.D. Cal. 2023); *Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872, 891 (N.D. Cal. 2023). Neither defense provides enough clarity or certainty to reduce unfair settlement pressure.

Nor does Plaintiffs' "substantial similarity" approach. In an infringement suit, substantial similarity commonly requires a trial. *See, e.g., Peter F. Gaito Architecture, LLC v. Simone Development Corp.,* 602 F.3d 57, 63 (2d Cir. 2010) (noting that, in an infringement suit, "the question of substantial similarity typically presents an extremely close question of fact"). There is little reason to think it would not present the same challenge in a Section 1202 case. Moreover, trolls could virtually always tack on a Section 1202 claim to their claims against alleged infringers, magnifying settlement pressure.

## III.  CLOSE ATTENTION TO STATUTORY LIMITS ALLOWS FAIR USE TO PLAY ITS PROPER ROLE AS A BACKSTOP FOR UNLICENSED CREATIVITY AND INNOVATION

Close attention to statutory text is especially important in copyright cases. *See Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 883–84 (9th Cir. 2005) ("Copyright . . . is a creature of statute, and the only rights that exist under copyright law are those granted by statute"). As the Supreme Court observed in *Google v. Oracle:*

> the principle of copyright is a "tax on readers for the purpose of giving a bounty to writers." [citation omitted] Congress, weighing advantages

14

and disadvantages, will determine the more specific nature of the tax, its boundaries and conditions, the existence of exceptions and exemptions, all by exercising its own constitutional power to *write a copyright statute*.

593 U.S., at 17 (emphasis added). That tax—including the expense of litigation—should not be levied unless the Copyright Act clearly requires it.

But the fair use doctrine, while powerful, can tempt courts and policy makers alike to try to resolve via an affirmative defense what might be more easily addressed by close attention to the Copyright Act's statutory text. In *Google v. Oracle*, for example, Google and supporting amici urged the Supreme Court to resolve the dispute on the grounds that the copied material was not copyrightable in the first place. *See, e.g.,* Br. of Petitioner at 13–15, 22–28 (Jan. 6, 2020);[7] Br. of *Amicus Curiae* Electronic Frontier Foundation at 3–26 (Jan. 13, 2020).[8] Instead, the Court relied entirely on fair use, forcing the parties to fight through a trial and multiple appeals. Google ultimately prevailed; less well-resourced parties might not.

The same dynamic can be found in the battles over model codes incorporated by reference into law. Standards development organizations have fought for decades to assert copyright in those codes, and have sued independent organizations and

---

[7] Available at https://www.supremecourt.gov/DocketPDF/18/18-956/127663/20200106172508533_18-956%20ts.pdf.

[8] Available at https://www.supremecourt.gov/DocketPDF/18/18-956/128361/20200113140736454_18-956%20tsac%20Electronic%20Frontier%20Foundation.pdf.

companies that seek to make them available online. *See, e.g., Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc., et al.*, 896 F.3d 437, 458–59 (D.C. Cir. 2018) (Katsas, J., concurring); *Facilities Guidelines Institute, Inc. v. UpCodes, Inc.*, 677 F. Supp. 3d 955, 961–62 (E.D. Mo. 2023). Multiple courts have noted the significant due process problems that can flow from allowing a private party to control and charge for access to the law. *See, e.g., Georgia v. Public.Resource.Org, Inc.,* 590 U.S. 255, 265 (2020); *Bldg. Officials & Code Adm. v. Code Technologies, Inc.*, 628 F.2d 730, 734, 736 (1st Cir. 1980); *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 799 (5th Cir. 2002) (*en banc*). A solution to this dilemma may be found in Section 102(b) of the Copyright Act itself, which expressly excludes "any idea, procedure, process, system, method of operation, concept, principle, or discovery"—categories that would seem to easily encompass laws. Instead, courts have repeatedly held that the fair use doctrine allows independent organizations and companies to facilitate public access to standards incorporated by reference into law. *See, e.g. Am. Soc'y for Testing & Materials*, 896 F.3d at 459 (Katsas, J., concurring). Those outcomes, while welcome, still force those organizations and companies to undergo years of expensive litigation in order to provide an important public service.

By contrast, strict enforcement of statutory requirements has been useful in staving off some copyright troll lawsuits. For example, Righthaven, LLC sued hundreds of users and websites over excerpts of news stories posted on blogs and

message boards. *See, e.g., Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1168 (9th Cir. 2013). A document unearthed in one case showed that the actual copyright owner did not assign its rights in the work, but merely agreed to allow Righthaven to pursue the case at its own expense in exchange for a cut of the recovery. *Righthaven*, 791 F. Supp. 2d at 972; Kurt Opsahl, *Righthaven Ordered to Pay $5,000 in Sanctions for Its Misrepresentations to Court*, Electronic Frontier Foundation (July 15, 2011).[9] The court dismissed the case because a bare right to sue is not one of the exclusive rights listed in Section 106. *Righthaven*, 791 F. Supp. 2d at 973–74, 976; *see also Righthaven*, 716 F.3d at 1170. The use was likely fair in any event, but strict attention to the Copyright Act's *prima facie* requirements allowed the suit to be resolved more quickly, with less harm and expense to the secondary user. *Righthaven*, 791 F. Supp. 2d at 973–74.

Close attention to statutory limits is particularly necessary today, given the proliferation of copyrighted works in virtually every facet of daily life. The vast majority of what we do online, from email to texting to viewing images and making TikToks, involves creating, replicating, and/or repurposing copyrighted works. Since copyright is a limited but lengthy monopoly over those works, in theory, using or even viewing them might require a license; now, and for many decades in the

---

[9] Available at https://www.eff.org/deeplinks/2011/07/righthaven-order-pay-5-000-sanctions-its.

17

future. And copyrightable software can now be found in everything from cars to refrigerators to watches, subject to a non-negotiable license and digital locks that constrain fair uses. Federal Trade Commission, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, at 24 (May 2021);[10] Corynne McSherry and Kit Walsh, *One Weird Trick to Improve Copyright: Fix EULAs*, Electronic Frontier Foundation (Jan. 17, 2017).[11]

In this context, the last thing any court should do is give rightsholders a new, freestanding attribution right, backed by potentially massive statutory penalties. Instead, this Court should follow the Supreme Court's guidance:

> [Where] Congress has not plainly marked our course, we must be circumspect in construing the scope of rights created by a legislative enactment.

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 431 (1984); s*ee also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–34 (2003) (noting that when "Congress has wished to create such an addition to the law of copyright," it has done so with "specificity"); *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 572 U.S. 915, 923 (2014) ("courts should not create liability for…non-infringing conduct where Congress has elected not to extend that

---

[10] Available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf.
[11] Available at https://www.eff.org/deeplinks/2017/01/one-weird-trick-improve-copyright-fix-eulas.

concept").

## CONCLUSION

For the reasons stated above, we urge the Court to affirm the decision below.

Dated: July 18, 2025                     By: _/s/ Corynne McSherry_
                                                Corynne McSherry

                                                Victoria Noble
                                                ELECTRONIC FRONTIER
                                                FOUNDATION
                                                815 Eddy Street
                                                San Francisco, CA 94109
                                                Telephone:  (415) 436-9333
                                                Fax:  (415) 436-9993
                                                corynne@eff.org

                                                *Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify as follows:

1.     This Brief of Amici Curiae Electronic Frontier Foundation and Public Knowledge in Support of Defendants-Appellees and Affirmance with the type-volume limitation of Fed. R. App. P. 32(a)(5) because this brief contains 4,338 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, the word processing system used to prepare the brief, in 14 point font in Times New Roman font.

Dated:  July 18, 2025            By:  */s/ Corynne McSherry*
                                           Corynne McSherry

                                       *Counsel for Amici Curiae*

20

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on July 18, 2025.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

Dated:  July 18, 2025

By:  /s/ *Corynne McSherry*
Corynne McSherry

*Counsel for Amici Curiae*