**Case No. 24-7700**

====================================================================

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

J. DOE, 1; J.DOE, 2-5, Individually and on behalf of all others similarly situated,
*Plaintiffs-Appellants*

v.

GITHUB, INC., a Delaware corporation, MICROSOFT CORPORATION,
a Washington corporation; OPENAI, INC., a Delaware nonprofit corporation; OPENAI,
LP, a Delaware limited partnership; OPENAI GP, LLC, a Delaware limited liability
company; OPENAI STARTUP FUND GP I, LLC, a Delaware limited liability company;
OPENAI STARTUP FUND I, LP, a Delaware limited partnership; OPENAI STARTUP
FUND MANAGEMENT, LLC, a Delaware limited liability company; OPENAI OPCO,
LLC; OPENAI, LLC; OPENAI GLOBAL, LLC; OAI CORPORATION; OPENAI
HOLDINGS, LLC; OPENAI HOLDCO, LLC; OPENAI INVESTMENT; OPENAI
STARTUP FUND SPV I, LP; OPENAI STARTUP FUND SPV GP I, LLC,
*Defendants-Appellees*.

---

*Appeal from the United States District Court for the Northern District of California,
Case No. 22-cv-06823-JST • The Honorable Jon S. Tigar*

---

## BRIEF OF *AMICUS CURIAE* AUTHORS ALLIANCE
## IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

---

Christopher Bavitz
Cyberlaw Clinic
1557 Massachusetts Ave., 4th Floor
Cambridge, MA 02138
(617) 496-5155
cbavitz@law.harvard.edu

Counsel for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Authors Alliance does not have parent corporations and no publicly held corporation owns ten percent or more of its stock.

Dated: July 18, 2025

/s/Christopher Bavitz
Christopher Bavitz

## STATEMENT OF COMPLIANCE WITH RULE 29

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *amicus curiae* certifies that all parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus curiae* certifies that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund the preparation or submission of this brief; and no person—other than the *amicus curiae*, its members, or its counsel— contributed money that was intended to fund the preparation or submission of this brief.

Dated: July 18, 2025

/s/Christopher Bavitz
Christopher Bavitz

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

STATEMENT OF COMPLIANCE WITH RULE 29 ............................................ ii

TABLE OF CONTENTS ........................................................................................ iii

TABLE OF AUTHORITIES .................................................................................. iv

STATEMENT OF INTEREST ............................................................................... 1

SUMMARY OF THE ARGUMENT ...................................................................... 3

ARGUMENT .......................................................................................................... 5

   I.    Section 1202(b) applies when CMI is removed during unlawful replication or distribution of exact copies or large excerpts..................................... 8

   II.    Section 1202(b) does not apply to new adaptations of an existing work, because no CMI is "removed or altered" from a "copy" of the existing work. .. 10

      A.  The text of Section 1202(b) indicates that a new adaptation does not need to *add* CMI. .................................................................................................... 10

      B.  The legislative history confirms new adaptations do not need to actively *add* CMI that are affixed to copies of an existing work. ............................... 12

      C.  Lower courts have repeatedly and rightly declined to impose liability under Section 1202(b) on new adaptations of an existing work. ..................... 14

      D.  Extending Section 1202(b) to new adaptations would produce absurd results and incentivize frivolous litigation. ...................................................... 18

   III.    Section 1202(b) does not apply to clearly lawful uses of copyrighted works. ................................................................................................................... 21

CONCLUSION ....................................................................................................... 26

CERTIFICATE OF COMPLIANCE ...................................................................... 27

CERTIFICATE OF SERVICE ............................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Adjmi v. DLT Entm't Ltd*., 97 F. Supp. 3d 512 (S.D.N.Y. 2015) ........................... 29

*Agence France Press v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011)................... 9

*APL Microscopic, LLC v. Steenblock*, No. 21-55745, 2022 WL 4830687 (9th Cir. Oct. 3, 2022)...................................................................... 11

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2nd Cir. 2015);............................. 30

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ......... 29

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994).................................... 30

*Crowley v. Jones*, 608 F. Supp. 3d 78 (S.D.N.Y. 2022)........................................ 17

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-CV-01463, 2022 WL 16961477 Aug. 25, 2022)......................................................................... 21

*Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927 (C.D. Cal. 2018) ................... 17

*Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp. 2d 1352 (N.D. Fl. 2010) 18

*Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y 2018) ..................................... 18

*Friedman v. Live Nation Merch., Inc.*, 833 F. 3d 1180 (9th Cir. 2016) ................ 10

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-CV-00496, 2015 WL 263556 (D. Haw. Jan. 21, 2015) ..................................................... 21

*IQ Grp., Ltd. v. Wiesner Pub., LLC*, 409 F. Supp. 2d 587 (D.N.J. 2006) ............. 15

*Kadrey v. Meta Platforms, Inc.*, Case No. 23-cv-03417, Dkt No. 601, Order Granting Meta's Mot. for Partial Summ. J. as to the Pls. DMCA claim, (N.D. Cal. Jun 27, 2025) ................................................................ 27

*Kelly v. Arriba Soft Corp.*, 77 F.Supp.2d 1116 (C.D. Cal. 1999)........................... 17

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. 21-CV-00673, 2022 WL 1105751 (W.D. Tex. Apr. 13, 2022) .................................................. 20

*Kirk Kara Corp. v. W. Stone & Metal Corp.* CV 20-1931-DMG (Ex), 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ........................................ 20

*Playboy Enters. Int'l Inc. v. Mediatakeout.com LLC*, No. 15-CV-7053, 2016 WL 1023321 (S.D.N.Y. Mar. 8, 2016)........................................ 10

*Pryimachenko v. Home Box Office, Inc.*, No. 23-CV-10034 (LAK) (RWL), 2025 WL 567988 (S.D.N.Y. Jan. 14, 2025)................................................. 19

*Savage v. Council on Am.-Islamic Relations, Inc.*, No. 07 Civ. 6076 (SI), 2008 WL 2951281 (N.D. Cal. Jul. 25, 2008) ................................................. 28

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, No. 09 Civ.1468 (SBA), 2009
WL 2157573 (N.D. Cal. 2009)............................................................ 28

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184 (C.D. Cal.
2007)................................................................................................ 14

*Viral DRM LLC v. Seven W. Media Ltd.*, 2025 WL 660250 (N.D. Cal. Feb. 28,
2025)................................................................................................ 25

*Williams v. Hy-Vee, Inc.*, 661 F. Supp. 3d 871 (S.D. Iowa 2023) ......................... 18

## Federal Statutes

17 U.S.C. § 101 ............................................................................................ 12

17 U.S.C. § 106 ............................................................................................ 12

17 U.S.C. § 109 ............................................................................................ 12

17 U.S.C. § 1202 ........................................................................................... 6

17 U.S.C. § 1202(b) .......................................................................... 4, 8, 13, 27

17 U.S.C. § 1202(b)(1) ................................................................................... 6

17 U.S.C. § 1202(b)(3) ................................................................................... 6

17 U.S.C. § 1202(c) ............................................................................... 6, 12, 13

17 U.S.C. § 1203(c)(3)(B) ............................................................................. 25

## Other Authorities

Aaron Schwabach, *The Harry Potter Lexicon and the World of Fandom: Fan
Fiction, Outsider Works, and Copyright*, 70 U. Pitt. L. Rev. 387 (2009) ........... 23

Alexandra Alter, *The Weird World of Fan Fiction*, Wall St. J. (June 14, 2012),
https://www.wsj.com/articles/SB10001424052702303734204577464411825970
488 ................................................................................................. 24

*Alter*, Merriam-Webster, https://www.merriam-webster.com/dictionary/alter ...... 13

Br. Authors Guild, Inc. as Amicus Curiae ............................................................ 27

Compl., Doc. 1, No. 4:22-cv-06823-JST .............................................................. 11

David Bamman et al., *Measuring Diversity in Hollywood Through the Large-Scale
Computational Analysis of Film*, 121 PNAS 46, Nov. 12, 2024........................ 31

H.R. Rep. 105-551(l) (1998)............................................................................. 15

Information Infrastructure Task Force, *Intellectual Property and the National
Information Structure* (1995) ............................................................... 15

Jonathan Lethem, *The Ecstasy of Influence: A Plagiarism*, Harper's Magazine, Feb. 2007, https://harpers.org/archive/2007/02/the-ecstasy-of-influence/ ............ 2

Opening Br. Appellants, No. 24-770 ....................................................... 14

Rachel L. Stroude, *Complimentary Creation: Protecting Fan Fiction as Fair Use*, 14 Marq. Intell. Prop. L. Rev. 191 (2010) .............................................. 23

Rebecca Tushnet, *Legal Fictions: Copyright, Fan Fiction, and a New Common Law*, 17 Loyola L.A. Ent. L.J. 651 (1997) .......................................... 23

Rebecca Tushnet, *Naming Rights: Attribution and Law*, 2007 Utah L. Rev. 789 (2007) ....................................................................................... 5

*Remove*, Merriam-Webster, https://www.merriam-webster.com/dictionary/remove ............................................................................................. 13

S. Rep. No. 105-190 (1998) ................................................................. 15

Second Am. Compl., Doc. 200, No. 4:22-cv-06823-JST ....................... 11

**Regulations**

37 CFR § 201.40(b)(4) ......................................................................... 27

## STATEMENT OF INTEREST

Authors Alliance is a 501(c)(3) nonprofit that seeks to advance the interests of authors who want to serve the public good by sharing their creations broadly. Authors Alliance has over 3,000 members, including Nobel laureates, MacArthur Fellows, novelists, historians, fan fiction writers, journalists, and others. Our members, like authors of all types, rely heavily on the creativity and insights of other authors who came before them.

This Court granted Appellants' interlocutory appeal to determine whether Section 1202(b) of the Digital Millennium Copyright Act (DMCA) requires identicality between the original work and the challenged use. While other statutory elements—such as scienter—remain important safeguards, identicality is a threshold issue. How this Court resolves it will have far-reaching consequences for authors and their ability to engage in lawful, transformative uses of existing works.

Authors Alliance submits this *amicus* brief because permitting claims to proceed in the absence of close identicality between the original and subsequent works under Section 1202(b) of the DMCA would expose authors to expansive and unpredictable liability, thereby chilling lawful and socially valuable new expressions.

1

Consider, for example, Authors Alliance Advisory Board member Jonathan Lethem's widely acclaimed essay *The Ecstasy of Influence: A Plagiarism. See* Jonathan Lethem, *The Ecstasy of Influence: A Plagiarism*, Harper's Magazine, Feb. 2007, https://harpers.org/archive/2007/02/the-ecstasy-of-influence/. The essay exemplifies the kind of creative reuse that would be imperiled by Appellants' and their *amici*'s expansive reading of Section 1202(b). In his 10,000-word piece published in *Harper's Magazine*, Lethem explores the concept of artistic influence and ultimately reveals that the entire essay is composed of quotations drawn from dozens of other authors—artfully assembled without conventional attribution. Under the Appellants' construction of Section 1202(b), Lethem's essay—and countless other creative works that do not meticulously preserve copyright management information (CMI)—can be exposed to liability under DMCA Section 1202(b), even where no copyright infringement has occurred.

Because Section 1202(b) requires neither copyright registration nor proof of ownership, an expansive reading would open the floodgates to opportunistic litigation. Instead of promoting creativity, it would chill lawful expression and suppress innovation—outcomes directly at odds with the purpose of copyright. The interpretation advanced by the Appellants would deter all but the most risk-tolerant authors from engaging in the time-honored creative endeavors as described in Lethem's essay, undermining the participatory culture in an open society.

Accordingly, Authors Alliance urges this Court to interpret Section 1202(b) to apply only to exact copies and large excerpts that are close to exact copies. The Court should not adopt an expansive interpretation of Section 1202(b) that scrutinizes new adaptations or clearly lawful uses of existing works. Authors Alliance supports Appellees, because their uses have generated new works. Appellants fail to point to any underlying copyright infringement. Either condition alone supports a finding that Appellants have failed to satisfy the identicality requirement and, thus, shield Appellees from liability under Section 1202(b).

## SUMMARY OF THE ARGUMENT

This Court should not impose Section 1202(b) liability on new adaptations or clearly lawful uses of a copyrighted work under the identicality requirement.[1] Section 1202(b) liability may only attach when the defendant's work solely consists of unlawfully replicating and/or distributing exact copies or excerpts of an existing work without accompanying copyright management information Statutory text, legislative purpose, lower court precedent, and public policy considerations all weigh strongly in favor of our position.

---

[1] *Amicus* uses the term "adaptations" and not "derivative work" here, because an adaptation may not be substantially similar to the copyrighted work to implicate the rightsholder's exclusive right to prepare *derivative works* under Section 106(2). The term "clearly lawful uses" refers to instances where plaintiffs do not allege a copyright infringement claim and instances where their infringement claims are dismissed at the Rule 12 motion to dismiss stage, without the need to do deeper factual investigation.

3

The text of Section 1202(b) makes clear that CMI attaches to specific "copies" of an existing work, not the underlying work itself. It also provides that the prohibition is only on the "removal" of CMI, not on a failure to actively attach CMI when CMI did not exist in the first place. This suggests there is no duty to *add* CMI when a user makes a *new* adaptive use; a defendant does not "remove" CMI from a "copy" when the defendant produces a distinctly new work.

The legislative purpose behind Section 1202(b) underscores that the provision is intended to ensure creative works have accurate copyright information, so downstream licensees are not confused. New adaptations or lawful uses indiscriminately bearing an underlying work's CMI may confuse—rather than illuminate—the public's understanding of a rightsholder's interest in the online licensing market.

Lower court precedent overwhelmingly indicates that Section 1202(b) liability should only be contemplated for exact or close to exact copies and should not attach to creative adaptations that incorporate parts of an existing work or merely bear a resemblance thereto. From a public policy perspective, forcing creators of new adaptations to include an underlying work's CMI would lead to absurd results and sow confusion about the actual creator of the adaptation. An overly broad construction of Section 1202(b) would effectively create a new, inflexible requirement of attribution that lawmakers never intended; such a

4

construction would engender significant uncertainty in the copyright ecosystem and benefit only those who profit from frivolous lawsuits. *See* Rebecca Tushnet, *Naming Rights: Attribution and Law*, 2007 Utah L. Rev. 789, 812-14 (2007) (arguing that integrating an attribution right into U.S. copyright law poses challenges due to vague and varied attribution norms, a litigious culture, and the potential for overenforcement that could chill legitimate uses).

In this case, Appellants' Section 1202(b) claims are doubly flawed. Appellee GitHub used the Appellants' works as part of a broader adaptation. Appellants do not even allege that GitHub's use constitutes an unlawful use of copyrighted works. Accordingly, the lower court correctly declined to impose liability under Section 1202(b), and this Court should affirm the lower court's decision.

## ARGUMENT

Section 1202 of the DMCA sets out a statutory scheme to protect the "[i]ntegrity of copyright management information." 17 U.S.C § 1202. Individuals who "intentionally remove or alter any copyright management information" or who "distribute" works "knowing that copyright management information has been removed or altered" may be subject to liability. 17 U.S.C. § 1202(b)(1), (3). The statute defines CMI to include a work's title, author, and other attribution metadata "conveyed in connection with copies . . . of a work." § 1202(c).

Section 1202 is, at its core, a statute designed to address the practical concern of preventing piracy and presenting accurate licensing information. Before getting into the textual arguments and legislative history, it is instructive to consider how Section 1202(b) accomplishes or fails to accomplish its goal across several groupings of practical scenarios. Assume each of the following resulting works, as listed, is reproduced or distributed with the CMI *actively removed* or altered:

- a digital sound recording;

- an ebook with its title page removed;

- a bootleg movie without the end credits; or

- a digital image with copyright information cropped out, but still showing the majority of its expressive elements.

Imposing liability in these cases under Section 1202(b), assuming scienter and other requirements are met, ensures that accurate copyright and licensing information accompany copies of creative works as rightsholders and legislators intended, without causing any confusion for downstream users as to the copyright ownership of a work.

Consider a second group of hypotheticals that include reproduction and distribution of copies without CMI, where there has been *no active removal* or

alteration of CMI, whether by virtue of necessary format shifting or because a new adaptation or derivative work is made in the process:

- a song recorded at a concert, where the person making the recording does not know the identity of the performers, let alone rightsholders;

- an ebook converted into braille, where lengthy terms of service is omitted;

- a video essay using movie clips, where the original studio logos and credits are absent due to the excerpted nature of the content; or

- a commissioned image being revised by a later-hired artist.

Though the reproduction or distribution of these *may be independently subject to copyright infringement claims*, they are nevertheless not suitable for 1202(b) liability. Downstream users may be confused about the correct rightsholder or licensing information if the person making the adaptation *adds* CMI based on the adapter's own understanding of ownership. A duty to *add* CMI is impractical and likely to undermine rather than serve the interests of rightsholders.

Finally, consider a third group of hypotheticals of *lawful* reproduction or distribution of copies, where CMI is actively removed or altered:

- a block quote taken from an ebook and uses in a scholarly essay commenting or criticizing the original;

7

- a set of DVDs that are copied and stripped of CMI for scholarly analysis using computational text and data mining research techniques; or

- an image of a politician edited and reprinted to criticize the views of that politician.

These instances should not give rise to liability under Section 1202(b), because it would not be reasonable to expect that CMI remains intact in such use cases. The removal of CMI is incidental, inconsequential, or justified by lawful transformative use in these cases. Moreover, downstream users consuming these new adaptations are not the intended markets for the underlying works.

This Court should not impose Section 1202(b) liability on defendants like GitHub, that produce new adaptations or make other clearly lawful uses of copyrighted works. The Court should be mindful of the broader impact its decision will have on creative expressions, lest an overly rigid attribution requirement and the litigation risk it invites deter authors from producing new and socially valuable works, including those like Jonathan Lethem's *The Ecstasy of Influence: A Plagiarism*.

## I.    Section 1202(b) applies when CMI is removed during unlawful replication or distribution of exact copies or large excerpts.

Courts have consistently and correctly allowed Section 1202(b) claims to proceed against defendants who *unlawfully* reproduce or distribute exact copies or

large excerpts of an existing work. For example, in *Agence France Press v. Morel*, the court denied a motion to dismiss a copyright infringement claim and accompanying Section 1202(b) claim against a news agency that disseminated exact copies of photographs without including the photographer's CMI. *Agence France Press v. Morel*, 769 F. Supp. 2d 295, 298–300, 306 (S.D.N.Y. 2011); *see also Playboy Enters. Int'l Inc. v. Mediatakeout.com LLC*, No. 15 Civ. 7053 (PAE), 2016 WL 1023321, at *1 (S.D.N.Y. Mar. 8, 2016) (declining to dismiss copyright infringement and Section 1202(b) claims against a defendant who redistributed the plaintiff's photograph, having replaced the plaintiff's watermark with its own). Indeed, this Court has already recognized that unlawfully reproducing or distributing copies of an existing work may trigger liability under Section 1202(b). In *Friedman v. Live Nation Merchandise, Inc.*, this Court allowed a Section 1202(b) claim to proceed against a defendant who unlawfully distributed "exact copies" of the plaintiff's photographs on merchandise without the photos' accompanying CMI. *Friedman v. Live Nation Merch., Inc.*, 833 F. 3d 1180,1188 (9th Cir. 2016). Likewise, in *APL Microscopic, LLC v. Steenblock*, this Court reversed the dismissal of copyright infringement and Section 1202(b) claims against a defendant who directly reproduced "cropped versions" of the plaintiff's photographs on the defendant's social media pages. *APL Microscopic, LLC v. Steenblock*, No. 21-55745, 2022 WL 4830687, at *2 (9th Cir. Oct. 3, 2022).

Overall, Section 1202(b) liability applies when a defendant unlawfully reproduces or distributes copies or large excerpts of an existing work, without any modifications to that work. GitHub's use of Appellants' works without CMI fails to fit into this traditionally accepted scope of Section 1202(b), both because GitHub used the Appellants' works to create new works and because the Appellants do not allege that GitHub's use is an infringing use of copyrighted works. *See* Compl., Doc. 1, No. 4:22-cv-06823-JST, at 33–50; Second Am. Compl., Doc. 200, No. 4:22-cv-06823-JST, at 49–58.

## II.    Section 1202(b) does not apply to new adaptations of an existing work, because no CMI is "removed or altered" from a "copy" of the existing work.

### A.    The text of Section 1202(b) indicates that a new adaptation does not need to *add* CMI.

The text of Section 1202 makes clear that CMI attaches to specific "copies" of a work, not the "work" itself. *See* 17 U.S.C. § 1202(c). This means that CMI travels with copies of a work where rightsholders have affixed CMI, but the CMI does not metaphysically bind with the underlying work. This distinction is carefully measured. The Copyright Act distinguishes between works and copies of works. "Copies" are "material objects . . . in which a work is fixed." *Id.* § 101. The Act uses that word, for example when defining rightsholders' exclusive rights. *Id.* § 106. When the Act instead speaks about rights related to a "copy," it uses the

10

word "copy" specifically. *See generally id*. Rights in copies do not go beyond those specific "copies"—such as in Section 109, where the first sale attaches to specific "copies" of a work and not the underlying work itself. *Id.* § 109. If "copies" were read to include the underlying "work," Section 109 would make Section 106 irrelevant.

Section 1202 defines CMI as being "conveyed in connection with copies . . . of a work." *Id.* § 1202(c). This clearly delineates that the scope of users' responsibility to retain CMI under Section 1202(b) is limited to the specific "copies" that bear CMI. It clearly does not confer an affirmative duty to affix CMI when the underlying *work* is used to produce adaptations.

The limitation of liability to cases where CMI is "removed or altered" further strengthens the reading provided above. *Id.* § 1202(b). The word "remove" means "to get rid of" or "tak[e] away or off." *Remove*, Merriam-Webster, https://www.merriam-webster.com/dictionary/remove. "Alter" means "to make different without changing into something else." *Alter*, Merriam-Webster, https://www.merriam-webster.com/dictionary/alter. The words describe an active process of stripping or changing CMI already attached to a copy of a work, rather than a failure to *add* CMI to an adaptation or a derivative work. If no CMI ever existed with a new adaptation or derivative work, nothing has been "taken away" or "ma[d]e different" from it. The fact that the term "identical copies" is not used

11

in the statute cannot be interpreted to mean that new adaptations or derivative works are subject to Section 1202(b). *Contra* Opening Br. Appellants, No. 24-770, 30-31

The scope of 1202(b) based on its plain text, as explained above, is more nuanced than the phrase "identical copies" can capture. If the statute adopted the phrase "identical copies" to limit the scope of 1202(b), infringers could easily avoid liability by stripping CMI. After all, a copy without CMI is often not "identical" to a copy without CMI (such as an ebook without its title page or a movie without end credits).

### B.    The legislative history confirms new adaptations do not need to actively *add* CMI that are affixed to copies of an existing work.

The core purpose of CMI is to "inform the user about the authorship and ownership of a work . . . as well as to indicate authorized uses of the work." *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1197 (C.D. Cal. 2007). The working group that advanced the initial draft of Section 1202 analogized CMI to "a kind of license plate for a work on the information superhighway." *See* Information Infrastructure Task Force, *Intellectual Property and the National Information Structure*, 235 (1995); *see also IQ Grp., Ltd. v. Wiesner Pub., LLC*, 409 F. Supp. 2d 587, 594 (D.N.J. 2006) (discussing the working group's analysis). In its report favorably advancing the DMCA, the Senate Judiciary Committee likewise emphasized that CMI helps ensure an "efficient

12

Internet marketplace" by "tracking and monitoring uses of copyrighted works, as well as licensing of rights and indicating attribution, creation and ownership." S. Rep. No. 105-190, at 16 (1998). The House Judiciary Committee similarly underscored that Section 1202 would protect the integrity of CMI and thereby protect "authors and copyright owners from interference with the private licensing process." H.R. Rep. 105-551(l), at 10-11 (1998).

Given that the legislative purpose of Section 1202 is to promote accurate copyright information in order to facilitate licensing, it makes sense for Section 1202 to require that downstream users maintain the accurate CMI deliberately affixed by rightsholders to *copies* of works. But, the duty should not extend to creating or adding CMI for new adaptations of the same *work*. When a defendant produces a new adaptation or derivative work, that new work is a separate object for licensing purposes. It would defeat the legislative purpose to require that creators *add* CMI that does not accurately reflect the copyright and licensing information that downstream users would need to know. For any new adaptations that are not exact or close to exact copies, rightsholders of the underlying work may not wish to be contacted for licensing requested or even be associated with the work. Indeed, owners of rights in the underlying work might be positively opposed to the new adaptation and might not even in a position to grant permission. Requiring that CMI be attached to new adaptations—that are not exact copies or

13

close to exact copies—will inevitably cause confusion for downstream users instead of clarifying correct licensing information for them as Congress intended.

### C. Lower courts have repeatedly and rightly declined to impose liability under Section 1202(b) on new adaptations of an existing work.

Whereas lower courts have allowed Section 1202(b) claims to proceed against defendants who unlawfully reproduce or distribute exact or close to exact copies of an existing work, courts have denied Section 1202(b) claims when a defendant creates a new adaptation that incorporates parts of an existing work or that bears a resemblance to such work. As these lower courts have recognized, a defendant does not "remove" CMI from a "copy" of a work when the defendant creates a new work without *adding* the CMI that was associated with copies of the original work.

First, courts have dismissed Section 1202(b) claims against defendants who incorporate an exact portion of an existing work as part of a new adaptation or derivative work. In *Kelly v. Arriba Soft Corp.*, the court explained that displaying thumbnails of the plaintiff's images without CMI did not violate 1202(b), because CMI was not removed from the plaintiff's original images. *Kelly v. Arriba Soft Corp.*, 77 F.Supp.2d 1116, 1122-23 (C.D. Cal. 1999), *aff'd and rev'd in part on other grounds,* 336 F.3d 811 (9th Cir. 2003). In *Crowley v. Jones*, the district court denied Section 1202(b) claims against a defendant who modified a plaintiff's

14

photograph using a "grainy, horizontal filter." *Crowley v. Jones*, 608 F. Supp. 3d 78, 91 (S.D.N.Y. 2022). In *Falkner v. General Motors LLC*, the defendant had taken a photograph that featured most of the plaintiff's mural, set against Detroit's skyline. *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 929 (C.D. Cal. 2018). Even though the photograph omitted the part of the mural that included the plaintiff's CMI, the court denied a Section 1202(b) claim against the defendant, determining that the defendant's "framing a photograph" did not "constitute[] 'removal' or 'alteration.'" *Id.* at 938. Rather, the defendant "simply chose not to include" part of the mural in his *new work*. *Id.* The court in *Williams v. Hy-Vee, Inc.*, similarly concluded that framing a photograph of an artist's mural in such a way that it excluded the mural's CMI did not violate Section 1202(b). *Williams v. Hy-Vee, Inc.*, 661 F. Supp. 3d 871, 885 (S.D. Iowa 2023).

Section 1202(b) liability has also not attached when a defendant incorporates an existing work in other forms of expressive outputs. *See Fischer v. Forrest*, 286 F. Supp. 3d 590, 609–10 (S.D.N.Y 2018) (denying a Section 1202(b) claim when the defendant's advertising included some of the plaintiff's advertising slogans but featured new content as well), *aff'd*, 968 F. 3d 216 (2d Cir. 2020); *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fl. 2010) (finding that the defendant who sold class notes that included a textbook's study questions had not "removed" the textbook's CMI but merely "copied" class information

15

"into a different form" and "then incorporated" this information into a new product). The district court's denial of a Section 1202(b) claim in *Pryimachenko v. Home Box Office, Inc.* is particularly instructive. *See generally Pryimachenko v. Home Box Office, Inc.*, No. 23-CV-10034 (LAK) (RWL), 2025 WL 567988 (S.D.N.Y. Jan. 14, 2025). There, the court emphasized that the defendant's use of plaintiff's YouTube video in a television episode and promotional ad was "unquestionably distinct," because it used the YouTube video "in the context of a much more expansive and longer work." *Id.* at *11-13.

Second, lower courts have not allowed Section 1202(b) claims to proceed against defendants who produce new works that resemble existing works, even when the new work is substantially similar to the existing work. In *Kirk Kara Corp. v. W. Stone & Metal Corp.*, the court held that even though the defendant's rings "may be substantially similar" to the plaintiff's rings, because "[d]efendant did not make identical copies of [p]laintiff's works and then remove the engraved CMI," 1202(b) did not apply. *Kirk Kara Corp. v. W. Stone & Metal Corp.*, CV 20-1931-DMG (Ex), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020). According to the *Kirk Kara* court, "even where the underlying works are similar, courts have found that no DMCA violation exists where the works are not identical," *Id.* (citing *Kelly*, 77 F.Supp.2d at 1122*aff'd and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003)). In *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, the

16

defendant used the plaintiff's copyrighted architectural plans to create "floor plan drawings" and "three-dimensional renderings" that did not include the plaintiff's plans' CMI. *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. 21-CV-00673, 2022 WL 1105751, at *1 (W.D. Tex. Apr. 13, 2022). While the court held that the plaintiff had sufficiently stated a claim for copyright infringement, it concluded that CMI had not been "removed" in violation of Section 1202(b); rather, the defendants simply had "not affirmatively added" CMI during the process of creating their *new* drawings and renderings. *Id.* at *3–5. The court in *Frost-Tsuji Architects v. Highway Inn, Inc.* likewise denied a Section 1202(b) claim against a defendant whose architectural drawings featured a design layout similar but "not identical" to the plaintiff's drawings. *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-CV-00496, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017). The district court in *Dolls Kill, Inc. v. Zoetop Business Co.* reached an analogous conclusion, denying a Section 1202(b) claim against a company that produced infringing "knockoff" clothes based on the plaintiff's clothing designs. *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-CV-01463, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022). As the court emphasized, "[t]he differences between the parties' products undercut any inference that [d]efendants removed or altered [p]laintiff's CMI." *Id.* at *4.

17

Collectively, precedent demonstrates that lower courts have predominantly declined to impose Section 1202(b) liability on new adaptations when they are not exact or near exact copies of an existing work. The fact that these cases have involved a wide variety of creative expression, ranging from photography to architecture to fashion, shows a consistent judicial reluctance to extend Section 1202(b) liability to situations in which an alleged infringer has not reproduced or distributed exact or near exact copies of a work. Courts have consistently required a showing that the defendant replicated or distributed copies of the original work with CMI removed or altered, rather than merely not adding CMI to copies of a new work. The case law reinforces what the statutory text and legislative history of Section 1202(b) make clear: the provision is not intended to impose liability for a failure to *add* CMI to new works, whether they are derivative works or other adaptations.

### D.    Extending Section 1202(b) to new adaptations would produce absurd results and incentivize frivolous litigation.

Public policy considerations further counsel against extending Section 1202(b) liability to adaptations that do not bear CMI. Such a liability scheme would be both impractical and harmful.

First, if creators of secondary works were required to add CMI attached to copies of underlying works, it would sow significant confusion about the source of these secondary works. The attribution of these new adaptations to the original

18

author might suggest that the adaptation is authorized by the original author, who in fact might not even want to be associated with the project.

Consider fan fiction. Fan fiction may infringe a copyright holder's exclusive rights by incorporating copyrightable characters, scenes, and other creative material, though fan fiction is sometimes implicitly authorized by the copyright holder or may qualify for fair use. *See* Aaron Schwabach, *The Harry Potter Lexicon and the World of Fandom: Fan Fiction, Outsider Works, and Copyright*, 70 U. Pitt. L. Rev. 387, 388 (2009); Rachel L. Stroude, *Complimentary Creation: Protecting Fan Fiction as Fair Use*, 14 Marq. Intell. Prop. L. Rev. 191, 199-206 (2010). Even when a copyright holder allows the reuse of content, it may request "disclaimers" from fan fiction creators so that the copyright holder can distance itself from the fan fiction and retain control of the "true" canon. *See* Rebecca Tushnet, *Legal Fictions: Copyright, Fan Fiction, and a New Common Law*, 17 Loyola L.A. Ent. L.J. 651, 676, 678–80 (1997). As a result, requiring fan fiction creators to include an adapted work's CMI would be particularly confusing. The appearance of the original author's CMI may imply the participation or endorsement of the original author, and it would contradict the wishes of authors who have no desire to be associated with such fan works. *See, e.g.*, Alexandra Alter, *The Weird World of Fan Fiction*, Wall St. J. (June 14, 2012), https://www.wsj.com/articles/SB10001424052702303734204577464411182597048

8 (discussing how Diana Gabaldon, author of the *Outlander* series, tries to distance herself from fan fiction).

Expanding 1202(b) to implicate new creative works would also promote opportunistic litigation and empower copyright trolls. Section 1202 liability can trigger significant statutory damage awards of up to $25,000 per violation. *See* 17 U.S.C. § 1203(c)(3)(B). There is no copyright registration requirement to bring a Section 1202(b) claim, nor is it clear that such a claim even requires proving copyright ownership. *See Viral DRM LLC v. Seven West Media Ltd.*, 768 F. Supp. 3d 1025, 1031 (N.D. Cal. 2025) (holding that even though only a copyright owner or exclusive licensee can state copyright infringement claims, the same requirement does not apply to Section 1202 claims). Given these low barriers to litigate Section 1202(b) claims, expanding liability beyond the unlawful replication of exact copies or excerpts could embolden trolls to sue authors who incorporate existing works while generating new expressions. Because of the expansive scope of what constitutes CMI, Plaintiff's CMI can sometimes be ambiguous or embedded in obscure or nonstandard formats, making compliance burdensome for authors who work with collage or remix art.

Finally, a decision by this Court establishing a rigid and expansive attribution requirement with Section 1202(b) would result in attribution requirements stricter than even those recognized in countries that explicitly

embrace the philosophy of moral rights. Unlike those systems, expansive attribution requirements based on Section 1202(b) would lack corresponding exceptions, limitations, and procedural safeguards that those systems typically include.

If this Court were to adopt the position advocated by the Appellants and their *amici*, the practical effect on actual authors is not that they would be credited for their creative expressions. Rather, they would have to weigh the desire to create against the threat of litigation under Section 1202(b). Moreover, under the Appellants' approach, there is little assurance that frivolous claims could be swiftly dismissed by failing a clear identicality requirement; when targeted with meritless claims, most authors would be mired in deep, costly, factual investigation, left only with defenses such as scienter.

## III. Section 1202(b) does not apply to clearly lawful uses of copyrighted works.

Section 1202(b) applies only to the removal or alteration of CMI that occurs "without the authority of the copyright owner or *the law*." 17 U.S.C. § 1202(b) (emphasis added). When an individual makes fair use or other lawful uses of copyrighted works without including CMI, imposing Section 1202(b) liability would undermine the broader aims of copyright law to promote creative expression and participation in our shared culture.

Appellants and their *amici* argue that limiting the scope of Section 1202(b) would give would-be infringers a roadmap for evading liability. *See* Opening Br. Appellants, No. 24-770, 39–40; Br. Authors Guild, Inc. as *Amicus Curiae*, No. 24-770, 3. But the real danger lies in the opposite approach: expanding Section 1202(b) beyond its intended boundaries carries significant risks. Allowing Section 1202(b) claims to proceed against clearly lawful uses—including parody, criticism, news reporting and other non-infringing, socially beneficial expressions—would expose authors to costly and uncertain litigation. It would also introduce confusion for authors, educators, and remix artists about whether and when they are obligated to preserve or add copyright management information, even in contexts where no infringement has occurred. There is no sound legal or policy reason to permit a Section 1202(b) claim to proceed without an accompanying copyright infringement claim.

At a minimum, this Court should ensure that *clearly* lawful uses remain firmly insulated from Section 1202(b) claims. Rule 12 motions should be upheld whenever a Section1202(b) claim is not accompanied by a viable copyright infringement claim. *Kadrey v. Meta Platforms, Inc.*, Case No. 23-cv-03417, Dkt No. 601, Order Granting Meta's Mot. for Partial Summ. J. as to the Pls. DMCA claim, (N.D. Cal. Jun 27, 2025) ("It does not make sense that Congress would have wanted to exempt secondary users who make a fair use from infringement liability,

only to open them back up to DMCA liability if they removed some boilerplate in doing so."). While it is true that fair use determinations can at times require a more developed factual record, not all fair use claims raise such issues. Some uses— such as obvious parody, criticism, or commentary—are so evidently non-infringing that they can and should be resolved with Rule 12 motions, alongside the analysis of identicality.

The adjudication of the fair use defense does not always require a deeper factual investigation; Rule 12 motions are regularly granted on fair use grounds. *See Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, No. 09 Civ.1468 (SBA), 2009 WL 2157573, at *5 (N.D. Cal. 2009) (granting a motion to dismiss on fair use grounds, where the defendant sent postcards designed like "WANTED" posters featuring photos of the plaintiff's executives along with critical remarks about the plaintiff's business practices); *Savage v. Council on Am.-Islamic Relations, Inc.*, No. 07 Civ. 6076 (SI), 2008 WL 2951281, at *4-9 (N.D. Cal. Jul. 25, 2008) (granting motion to dismiss on fair use grounds, where the defendants used a segment from the plaintiff's radio show to critique and comment on the plaintiff's opinions and statements); *Adjmi v. DLT Entm't Ltd*., 97 F. Supp. 3d 512, 531 (S.D.N.Y. 2015) (granting a Rule 12(c) motion based on fair use where the defendant playwright produced a parody of the television show *Three's Company*, offering criticism and commentary on its portrayal of issues like homosexuality

and drug use); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692-693 (7th Cir. 2012) (granting motion to dismiss on fair use grounds where the owner of a viral internet video sued the creators of a *South Park* episode that parodied the original video). Requiring authors to litigate Section 1202(b) claims in such contexts would create a chilling effect on creative expressions and burden courts and parties with unnecessary discovery over uses that are plainly lawful.

Indeed, applying Section 1202(b) to clearly lawful uses like parodies would lead to bizarre and unworkable results. Parodists would be compelled to include CMI, such as the name of the original author and potentially voluminous terms of use. However, given that parody is often critical (and sometimes even bawdy), the original author of the work under parody might not want to be affiliated with the parody work. *See, e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 572–73 (1994) (describing how the rap group 2 Live Crew made a lewd parody of a "bland and banal" rock ballad by Roy Orbison and William Dees, who subsequently refused to accept a license fee and album credit on the parody). Moreover, allowing Section 1202(b) claimants to target such clearly lawful uses would incentivize copyright trolls to undermine legitimate uses including journalism, teaching, and other non-infringing and socially beneficial activities. This further underscores why certain unmistakable instances of fair use should be considered as a part of the identicality analysis.

24

U.S. copyright law now recognizes text and data mining (TDM) as fair use, acknowledging TDM's transformative benefits and negligible market harm. *E.g. Authors Guild v. Google, Inc.*, 804 F.3d 202 (2nd Cir. 2015); 37 C.F.R. § 201.40(b)(4) (2024). TDM exemplifies the kind of lawful use that should fall outside the scope of Section 1202(b). TDM is a method of computational analysis that enables researchers to identify patterns, correlations, and new lines of inquiry across large corpora of texts or other media. Examples of lawful and socially-beneficial TDM research are ample. *See e.g.,* David Bamman et al., *Measuring Diversity in Hollywood Through the Large-Scale Computational Analysis of Film*, 121 PNAS 46, Nov. 12, 2024. The first step to TDM research is almost always the removal of CMI and other noise that appears in the dataset: researchers clean ebooks, for example, by removing the titles, publication information, and other extra-textual information, so that only the literary text remains to make up the corpus. Such a de-noised TDM corpus is a new work created under fair use that is not subject to Section 1202(b) liability. Allowing Section 1202(b) claims to proceed against researchers who omit CMI—whether during the process of cleaning datasets or when producing and distributing research outputs—would not only fail to align with Section 1202(b)'s text and purpose, it would also stifle innovation and chill socially valuable research. Researchers engaged in this work

should not be required to attach or preserve CMI merely to avoid statutory damages under a provision never intended to reach such uses.

## CONCLUSION

Extending Section 1202(b) liability to *clearly* lawful reuses threatens to upend the delicate balance of interests between authors of an existing work and future authors that wish to build on that work. A Section 1202(b) claim cannot proceed independent of a valid copyright infringement claim. For all of the reasons set forth herein, this Court should hold that Section 1202(b) applies only to defendants who removed or altered CMI when replicating or distributing exact or close to exact copies of the works, and this Court should thus affirm the dismissal of Appellants' claims under Section 1202(b).

Dated: July 18, 2025                         Respectfully submitted,


                                             /s/Christopher Bavitz
                                             Christopher Bavitz
                                             Cyberlaw Clinic
                                             1557 Massachusetts Ave., 4th Floor
                                             Cambridge, MA 02138
                                             (617) 496-5155
                                             cbavitz@law.harvard.edu

                                             Counsel for *Amicus Curiae*[2]

---

[2] *Amicus curiae* Authors Alliance thanks spring 2025 Cyberlaw Clinic students Justin Curl, Justin Curtis, Ben Gantt, and Peter Johnston and Clinic intern Zoë Sobel for their valuable contributions to this brief.

26

## CERTIFICATE OF COMPLIANCE

Pursuant to the Fed. R. App. P. 32(a)(7)(C), I hereby certify that: This brief complies with the type volume limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(b) and Ninth Circuit Rule 32-1(a) because it contains 5,866 words as calculated by the word count feature of Microsoft Word, exclusive of sections exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5)(A) and (a)(6) because it uses 14-point proportionally spaced Times New Roman font.

Dated: July 18, 2025

/s/Christopher Bavitz
Christopher Bavitz
Cyberlaw Clinic
1557 Massachusetts Ave., 4th Floor
Cambridge, MA 02138
(617) 496-5155
cbavitz@law.harvard.edu

27

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief of *Amicus Curiae* Authors Alliance in Support of Defendants-Appellees and Affirmance with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 18th, 2025. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECC system.

Dated: July 18, 2025

/s/Christopher Bavitz
Christopher Bavitz
Cyberlaw Clinic
1557 Massachusetts Ave., 4th Floor
Cambridge, MA 02138
(617) 496-5155
cbavitz@law.harvard.edu